BEAZLEY *et ux. vs.* REID *et al.*

1. Whether words declared on are libellous or not is a question for the jury. The court should not instruct them that the words declared on are libellous, unless where crime is distinctly charged, if at all.

2. The verdict is supported by the evidence.

Charge of Court. Libel. Verdict. Before Judge POT-TLE. Taliaferro Superior Court. February Term, 1881.

A. G. Beazley and his wife, Emma, brought suit for libel in the superior court of Taliaferro county against certain female defendants, members of the Ladies' Benevolent Society, organized for the purpose of erecting a fence around the public cemetery in the town of Crawfordville, of which society the plaintiff (Mrs. Beazley) was a member. The ground of the action was a publication by defendants concerning the plaintiff in the *Democrat*, a newspaper of said county. The language complained of in the declaration as libellous, together with the innuendoes, were as follows : "This is all that took place on those two memorable occasions, the 8th and the 11th inst., the opinion of the poor, unfortunate lady (meaning the said Emma) to the contrary notwithstanding. She may state most positively if she will, but the facts are against her. We have great curiosity to know what she means by ' middleman.'  *  *  *  Leaving this knotty question for the public to determine, merely remarking in passing  *  *  *  she did bring bring woe on that society in being used by another as the monkey did the cat's paw. Hence that desultory and rambling letter to the church at its last conference, and the reason she now seeks to bring woe on the whole community by publishing to the world, over the signature of 'Members of Ladies' Benevolent Society,' an article abounding in glaring mistakes of facts, and perversions of truth for which there is not the least justification.

"She (meaning the plaintiff, Emma,) seemed to labor under the delusion that she was the society itself, and could not distinguish between it and herself. · She claimed and exercised the right of giving complimentary suppers at the hot suppers, to whom she pleased, including a box of provisions to the crippled negro Ben, without consulting her lady associates. And it is questionable in the minds of some whether she gave away more than she contributed. She alone can answer. (Meaning thereby that the plaintiff, Emma, unlawfully and willfully appropriated the property therein mentioned to her own use, without consulting the owner of the same.)

"We would gladly have retreated from this painful task, but a stern sense of duty to ourselves and the public demands it, and we dare not shrink from it. Let no one think that we have criticized with needless harshness the conduct of this self-styled middleman. It was absolutely necessary to the proper vindication of truth on which we stand. We extend to her (meaning the plaintiff) the commiseration and pity for which her unfortunate condition so loudly calls, and ask your readers to grant her that compassion which they would cheerfully bestow on one who had lost half her mind because bereft of memory."

The defendants put in a plea of justification.

On the trial, much conflicting evidence was introduced, which it is unnecessary to set out in detail.

The jury brought in a verdict for the defendants. Plaintiffs moved for a new trial on the following grounds:

(1.) Because the court charged the jury that he could not tell them whether the words declared upon as libellous were libellous or not in law, and because, after reading to them from the Code the definition of libel, he left it for them whether said words were libellous or not.

(2.) Because the verdict is contrary to law and the evidence, and against the weight of the evidence.

The court overruled the motion and plaintiffs excepted.

JOHN W. HIXON; J. C. REID, for plaintiffs in error.

JAMES F. REID ; W. D. TUTT, for defendants.

JACKSON, Chief Justice.

This case presents an unfortunate controversy arising among ladies, and we forbear to say aught about it except to rule the dry law of the case.

1. The court left it to the jury to say whether the words published were libellous.   His language is "that he could not tell them whether the words declared upon were libellous or not in law ;" and reading to them from the Code the definition of libel, he left it to them to say whether the words were libellous or not.   On this statement of the court error is assigned here, the motion for a new trial being based thereon.

We think that the point is covered by the case of *Park & Iverson vs. The Piedmont Insurance Company*, 51 *Ga.*, 510.   In delivering the opinion of the court in that case, Justice Warner said :  " Whether the language of the publication did or did not charge the plaintiffs with having embezzled the defendant's money, or whether it charges them with having fraudulently appropriated the defendant's money, were questions of fact for the jury to determine from the plain and unambiguous language of the publication itself, without any intimation or expression of opinion by the court as to what offense that publication charged against the plaintiffs, or whether it charged any offense against them.   Whatever charge the publication did prove, the defendant alleged to be true, and was bound to prove the truth thereof at the trial, and that was the issue between the parties.   The practical effect of these two requests to charge was to require the court to say to the jury what was the meaning and import of the language contained in the publication, instead of leaving that question to the jury, whose province it was to determine  it without any intimation or expression of opinion by the court in relation thereto."

Beazley *et ux. vs.* Reid *et al.*

So in this case, it was the province of the jury to determine the meaning and import of the words published, without the expression or intimation of an opinion by the court. To have instructed them that the publication was libellous, would have been to express a positive and unequivocal opinion thereon, and to decide the entire case except the fact of publication and the *quantum* of damages.

We cannot say, therefore, that the court committed error in following the lead of the case in the 51st *Ga.*, under our peculiar statutory guard on the subject of the avoidance by the court of expressing opinions on facts. In matters of slander and libel especially, while the court must pass upon the libellous nature of the words spoken or written on demurrer to the declaration, or the necessity of evidence to show actual damage, it is for the jury to determine what proof is sufficient to establish the libellous effect of the words spoken or written, except, if at all, where crime is distinctly charged. In a case like this and that in the 51st, it is especially their province to pass on the publication, its nature, effect and the intention, malicious or otherwise, which inspired it. It will be noted, too, that the courts are disposed to relinquish their power to rule such cases so as to control the juries, and to leave these questions more exclusively to the juries. (See Judge Pottle's able opinion in the record.)

2. The question being for the jury and much evidence *pro.* and *con.* before them on the issues made, and the presiding judge having declined to set the verdict aside, under our well settled rule we decline also to disturb the verdict.

Judgment affirmed.