28515. BRANDON *v.* ARKANSAS FUEL-OIL COMPANY.

140

DECIDED NOVEMBER 27, 1940.    ADHERED TO ON REHEARING, DECEMBER 19, 1940.

*Eugene A. Epting,* for plaintiff.

*McElreath, Scott, Duckworth & DuVall,* for defendant.

STEPHENS, P. J. (After stating the foregoing facts.) "A libel is a false and malicious defamation of another, expressed in print, or writing, . . tending to injure the reputation of an individual, and exposing him to public hatred, contempt, or ridicule." Code, § 105-701. Where language does not directly and expressly contain a libel, it may do so if the words are capable of such construction, and would be so understood by persons to whom the words might be communicated. The defendant charged that the plaintiff had transferred and assigned to the defendant certain unpaid accounts owing to the plaintiff by the Highway Express Company in the amount of $32.72, for which the plaintiff was paid in full by the defendant; that the plaintiff thereafter collected from the Highway Express Company the accounts so assigned to the defendant, and that the plaintiff had retained and failed to remit to the defendant the amount so collected, and demanding that the plaintiff forward to the defendant the proceeds of "this unauthorized collection." The words as contained in the letter and the telegram are capable of the construction of charging the plaintiff with misappropriating money belonging to the defendant, and thereby charging the plaintiff with conduct which would expose the

plaintiff to public hatred or contempt, and would be so understood by any person to whom these words were communicated. The petition contains allegations which in effect attribute the above meaning to the words used in the letter and the telegram.

Where the language of a publication is reasonably susceptible of the construction that it makes a libelous charge, it becomes libelous when it conveys that charge and would be so understood by the person to whom the writing might be communicated. In *Holmes* v. *Clisby,* 118 *Ga.* 820, 823 (45 S. E. 684), it was said: "Whenever a publication is susceptible of two constructions, one of which would make it libelous and the other not, it is for the jury to say whether the words are in fact libelous. . . The plaintiff can not by innuendo draw from a writing a conclusion not justified by the language used; but it is competent for the plaintiff to explain in this way an ambiguous publication, to point out the intention of the author, and to show wherein the effect of the language was to injure his reputation. . . And the rule is that a publication must be construed in the light of all the attending circumstances, the cause and occasion of the publication, and all other extraneous matters which will tend to explain the allusion or point out the person in question. . . Words harmless in themselves may become libelous when the circumstances under which they are published are such as to convey a covert meaning to the reader reflecting injuriously upon the reputation of the person to whom they refer."

In *Park* v. *Piedmont & Arlington Ins. Co.,* 51 *Ga.* 510, the Supreme Court said: "If the plain, unambiguous words contained in the publication do not impute a criminal offense the meaning thereof can not be enlarged or extended by an innuendo for that purpose; but when the language used is capable of being understood in a double sense, the one criminal and the other innocent, the plaintiff, by making the proper allegations in his declaration, may, by an innuendo, aver the meaning with which he thinks it was published, and the jury may find whether the publication was made with that meaning or not." In *Williams* v. *Equitable Credit Co.,* 33 *Ga. App.* 441 (126 S. E. 855), this court stated: "Words that do not in themselves unequivocally convey a charge which may become libelous when falsely and maliciously published may nevertheless convey such a charge when the words are capable of being so understood and are so understood by the person to whom they are

uttered. Words apparently innocent may convey such a charge when they are considered in connection with the innuendo and the circumstances surrounding their publication."

The Supreme Court of the United States in Washington Post Co. v. Chaloner, 250 U. S. 290 (39 Sup. Ct. 448, 63 L. ed. 987), held: "A publication claimed to be defamatory must be read and construed in the sense in which the readers to whom it is addressed would ordinarily understand it. . . When thus read [the entire writing read together], if its meaning is so unambiguous as to reasonably bear but one interpretation, it is for the judge to say whether that signification is defamatory or not. If, upon the other hand, it is capable of two meanings, one of which would be libelous and actionable and the other not, it is for the jury to say, under all the circumstances surrounding its publication, including extraneous facts admissible in evidence, which of the two meanings would be attributed to it by those to whom it is addressed or by whom it may be read." In 36 C. J. 1161, it is stated: "Words used in imputing a crime should be weighed and considered in the light of the circumstances surrounding the parties at the time, and that effect given to them that they probably produced on the person to whom they were used." In Odgers on Libel and Slander (5th ed.) 116 it is stated: "If the words are incapable of the meaning ascribed to them by the innuendo and are prima facie not actionable, the trial judge will stop the case. If, however, the words are capable of the meaning ascribed to them, however improbable it may appear that such was the meaning conveyed, it must be left to the jury to say whether or no they were in fact so understood." See Bayliss v. Lawrence, 11 Ad. & El. 920. See also Beazley v. Reid, 68 Ga. 380, and the able opinion of the superior court judge who presided on the trial of the case reported in the 68th Georgia, supra, quoted in Horton v. Georgian Company, 43 Ga. App. 19, 33 (157 S. E. 892); Morgan v. Black, 132 Ga. 67 (63 S. E. 821); Colvard v. Black, 110 Ga. 642, 646 (36 S. E. 80).

The language of the two publications charged to the plaintiff the unauthorized collection and retention of money belonging to the defendant. It is alleged by innuendo in effect that the plaintiff was charged with the commission of a crime, and was exposed to public hatred and contempt. The petition contains allegations sufficient to charge a libel of the plaintiff by the defendant, by which the

plaintiff is accused of the dishonest act of appropriating to his own use money which he knew belonged to another. This is conduct which would tend to expose him to public hatred and contempt. It would be a question for the jury whether the language as used, under the innuendo alleged, constituted a libel of the plaintiff. Such libelous charge is actionable without proof of special damages. It is actionable per se. See *Augusta Evening News* v. *Radford,* 91 *Ga.* 494 (17 S. E. 612, 20 L. R. A. 533, 44 Am. St. R. 53) ; *White* v. *Parks,* 93 *Ga.* 633 (20 S. E. 78) ; *Western Union Telegraph Co.* v. *Pritchett,* 108 *Ga.* 411 (34 S. E. 216) ; *Colvard* v. *Black,* supra; 25 Cyc. 250. A libelous charge is actionable per se, whether the words directly or indirectly by intimation or innuendo, contain a libel. A libelous charge is just as effectively harmful, and therefore actionable per se, i. e., without proof of special damages, whether the harmful effect results from words which directly and unequivocally make the charge, or whether it results from words which do so indirectly or by inference. It is the harmful effect of the defamatory language which renders it actionable per se, and not its directness or unequivocal nature.

While a letter addressed to the person libeled does not constitute a publication, yet where copies of such letter are sent by the author to and received by third persons such sending and receiving therof constitute a publication. It is alleged in the petition that copies of the letter were sent to named third persons and read by them. Likewise a libel may be published by transmission thereof through telegraph. The writing of a message and the delivery of it to the telegraph company for transmission to the plaintiff constitute a publication by the writer of the message. See Newell on Libel and Slander (4th ed.) 224-229, §§ 179-182; 36 C. J. 1224, 1227, 1229, and cit. "A libel is published as soon as it is communicated to any person other than the party libeled." Code, § 105-705.

The petition as amended set out a cause of action, and the court erroneously sustained the demurrer.

*Judgment reversed. Felton, J., concurs. Sutton, J., dissents.*

SUTTON, J., dissenting. I do not think that the language used in the letter or telegram is libelous, or that the circumstances alleged in connection therewith make it libelous by innuendo. Neither the letter nor telegram charges the plaintiff with a crime; nor were they of such a nature as to injure the reputation of the plaintiff and

to expose him to public hatred, contempt, or ridicule. The letter is only a request by the defendant to the plaintiff to pay it the sum of $30.72, the same being for accounts originally owing by the Highway Express Company to the plaintiff, but which had been sold and transferred by the plaintiff to the defendant and later paid to the plaintiff by the Highway Express Company. The telegram from the defendant was a demand for settlement of the amount above mentioned. The letter and telegram were not published to the same people. It is true that these writings stated that the *receipt* of the money by the plaintiff from the Highway Express Company was not authorized by the defendant; but neither of these writings charges the plaintiff with misappropriation of the money, nor can they reasonably be construed to so charge. These writings are unambiguous and are not susceptible to the meaning or construction which the plaintiff has sought to allege or to impute to them by way of innuendo. The whole import of these writings is to the effect that the plaintiff, without authority from the defendant, had received the amount in question from the Highway Express Company, the only reasonable inference therefrom being that the Highway Express Company had not been notified of the sale and transfer of the charge accounts to the defendant by the plaintiff, and consequently had paid the amount direct to the plaintiff. I am of the opinion that the court properly sustained the defendant's general demurrer, and therefore I dissent from the decision of the majority of the court.