31658.   SOUTHEASTERN NEWSPAPERS INC. *v.* WALKER.

DECIDED OCTOBER 9, 1947.   REHEARING DENIED OCTOBER 30, 1947.

*Hull, Willingham, Towill & Norman, Hammond & Kennedy,* for plaintiff in error.

*Harris, Chance & McCracken,* contra.

FELTON, J. ■ The circumstances of this case are strikingly singular, unusual, and peculiarly different from the usual line of cases where the portrait of the person alleged to have been libeled is accompanied by an article which is either libelous per se or per quod. Here the article announcing the marriage of the plaintiff was of itself entirely innocuous and innocent, yet the accompanying portrait revealed a young woman, alleged to

resemble the plaintiff closely, holding a small child and conversing apparently with a young man whose back is to the camera and whose face is only partially revealed. It is alleged that this publication appeared on the front page of the Sunday edition of the newspaper, and that under all the circumstances attendant upon the publication of the announcement accompanied by the portrait the publication imputed to the plaintiff the commission of a crime, and held her up to public hatred, contempt and ridicule as having been guilty of an illicit love affair which resulted in motherhood out of wedlock. Taken in *mitiori sensu*, this publication at first glance would seem not to libel the plaintiff, as there are numerous innocent, reasonable, and plausible interpretations which could be placed upon the publication, but as early as *Little* v. *Barlow*, 26 *Ga.* 423 (71 Am. D. 219), we find the Supreme Court saying: "The old rule, that words spoken in disparagement of the character of a person, which are susceptible of two constructions, are to be understood in their milder sense is exploded. They are now to be interpreted in the sense that a person of ordinary capacity who heard them spoken would understand them." Though here we are not dealing with words alone but with words, a portrait, their combination, and the circumstances of their publication, words that do not in themselves unequivocally convey a charge which may become libelous when falsely and maliciously published may nevertheless convey such a charge when the words are capable of being so understood by the person to whom they are uttered and words apparently innocent may convey such a charge when they are considered in connection with the innuendo and the circumstances surrounding their publication. *Williams* v. *Equitable Credit Company*, 33 *Ga. App.* 441 (126 S. E. 855). It is, of course, the rule that if the words are clearly not defamatory, they cannot have their meaning enlarged by innuendo. *Jones* v. *Poole*, 62 *Ga. App.* 309 (8 S. E. 2d, 532); *Central of Georgia Ry. Co.* v. *Sheftall*, 118 *Ga.* 865 (45 S. E. 687); *Aiken* v. *Constitution Publishing Co.*, 72 *Ga. App.* 250 (33 S. E. 2d, 555). And a petition in an action on such words would be subject to a general demurrer. *Watters & Son* v. *Retail Clerks Union*, 120 *Ga.* 424 (47 S. E. 911). Where, however, the words are ambiguous and capable of being understood in a double

sense, the one criminal and the other innocent, the plaintiff may by proper allegation aver the meaning with which he claims that they were published and the jury may find whether they were published with that meaning or not. *Rubenstein* v. *Lee*, 56, *Ga. App.* 49 (192 S. E. 85); *Park & Iverson* v. *Piedmont & Arlington Life Insurance Co.*, 51 *Ga.* 510; *Colvard* v. *Black*, 110 *Ga.* 642 (36 S. E. 80); *Beazley* v. *Reid*, 68 *Ga.* 380; *Michael* v. *Bacon*, 5 *Ga. App.* 332 (63 S. E. 228); *Holmes* v. *Clisby*, 121 *Ga.* 241 (48 S. E. 934, 104 Am. St. 103). Whether or not the young woman in the portrait so closely resembled the plaintiff as to confuse her friends and acquaintances into thinking that it was the plaintiff or to confuse those who did not know the plaintiff but who might later meet or deal with her, and whether or not the combination of the announcement and the portrait together with the attendant circumstances of their publication was susceptible to the interpretation that the plaintiff had been guilty of an illicit and immoral sexual affair and whether or not those reading the publication understood the publication in that sense and believed that the imputation of crime was made as to the plaintiff, are all questions for the jury and cannot, under the facts of this case, be decided as a matter or law.

■ Counsel for the defendant insist that the plaintiff must have alleged that the defendant *intended* the publication to be understood in the guilty sense attributed to it by the plaintiff. We do not apprehend this to be the law. "The sense in which the publisher meant the language cannot be material. The dicta which apparently sanction such a rule will, on comparison with their context, be found in reality to be, not what did the defendant mean but what properly he may be taken to have meant. How might the language be understood by those to whom it was published? It cannot, therefore, be correct to say that the language is to be construed in the sense in which the publisher intended it to be understood. 'When a party has made a charge that clearly imputes a crime, he cannot afterwards be permitted to say, I did not intend what my words legally imply.'" Townshend on Slander and Libel (2d ed.), p. 176, § 139. "In an action for defamation it is immaterial what meaning the speaker intended to convey. He may have spoken without any intention of injuring another's reputation, but if he has done so he must

compensate the party. He may have meant one thing and said another; if so he is answerable for so inadequately expressing his meaning. If a man in jest conveys a serious imputation he jests at his peril. Or he may have used ambiguous language which to his mind was harmless, but to which the bystanders attributed a most injurious meaning; if so he is liable for the injudicious phrase he selected. What was passing in his own mind is immaterial save in so far as his hearers could perceive at the time. Words cannot be construed according to the secret intent of the speaker. 'The slander and the damage consist in the apprehension of the hearers.'" Newell, Slander and Libel (4th ed.), p. 301, § 264. "Intent, except as a part of express malice, is immaterial in libel. When the press issues a story, it accepts full responsibility for any error or mistake which results in injury to reputation. According to the opinion stated in Hatfield v. Gazette Printing Co. [103 Kan. 513 (175 P. 382)] 'the law looks to the tendency and consequences of a publication, rather than to the intention of the publisher.'" Thayer, Legal Control of the Press (1944), p. 201, § 35. "The rule is, that, unless the communication be a privileged one, the bona fides of the motive, purpose and intent of the person publishing the libel is not involved." *Estes* v. *Thomas*, 23 *Ga. App.* 301 (98 S. E. 101). In *Western Union Telegraph Co.* v. *Pritchett*, 108 *Ga.* 411 (34 S. E. 216), the court had this to say: "As a matter of defense, counsel for the defendant company offered to prove that, in making use of the term 'delinquent' it intended to convey a meaning somewhat less prejudicial to the plaintiff's character than that term, if given its ordinary import, would seem to suggest. . . In the absence of proof going to show that the person to whom the libelous communication was addressed understood this word in the restricted sense intended by the writer thereof, we are wholly at a loss to perceive what relevancy the evidence [the writer's intention] thus offered had upon the issue in the case." See also, in this connection, *White* v. *Parks & Co.*, 93 *Ga.* 633 (20 S. E. 78).

In *Behre* v. *National Cash Register Co.*, 100 *Ga.* 213 (27 S. E. 986, 62 Am. St. R. 320), the court was dealing with a privileged communication, and under the rule applicable to such cases the *intention* of the author of the allegedly libelous matter does become a material and essential ingredient and it is necessary that

the plaintiff aver that the defendant exceeded his privilege in that the publication was not merely for the purpose of protecting the defendant's interest, but that the defendant made the publication with the *intention* of injuring the plaintiff by either imputing to him a crime, subjecting him to public hatred, contempt or ridicule, or with the intention of injuring him in his business, trade, or profession. What is here said is in accord with the rule quoted above from the case of *Estes* v. *Thomas,* supra.

Where words are clear and unambiguous, they will be construed in their ordinary and natural sense, and the court will hold as a matter of law that they are not libelous. However, it would seem that the courts have extended the rule, with regard to the necessity of alleging the intention of the author of the allegedly libelous matter, to include those situations where though the words are clear and unambiguous they are used with a covert meaning and the author intended them in such covert sense, for as said in *Giddens* v. *Mirk,* 4 *Ga.* 364, "it is impossible for a man to slander in one sense and defend in another; to cover vituperation under irony, untechnical hints, covert insinuations, or any form of words, which skillfully avoiding a legal definition of crime yet communicates the poison of slander." Under such circumstances it becomes necessary to allege and prove that the defendant intended the apparently harmless words in the covert sense. *Anderson* v. *Kennedy,* 47 *Ga. App.* 380 (170 S. E. 555); *Mell* v. *Edge,* 68 *Ga. App.* 314 (22 S. E. 2d, 738); *Spence* v. *Johnson,* 142 *Ga.* 267 (82 S. E. 646, Ann. Cas. 1916 A, 1195). The instant case, however, does not come within that class of cases. In this case there is more than mere unambiguous, innocent words. There is the portrait, and the portrait with the words result in an ambiguous imputation, and where there is ambiguity it is for the jury to say whether or not the persons reading the publication understood it in its criminal or innocent sense.

Anything said in *Park* v. *Piedmont &c. Insurance Co.,* 51 *Ga.* 510 (supra), with regard to the necessity of alleging the intention of the author in making the allegedly libelous publication is obiter by reason of the fact that in that case the defendant entered a plea of justification and the only issue involved was the truth of the alleged libel.

In *Rubenstein* v. *Lee*, 56 *Ga. App.* 49 (supra), the allegedly slanderous words were capable of being understood either in an innocent sense or in a criminal one, and although the court there said: "The jury was authorized to find that it was the intention of the defendant to impute a crime to the plaintiff. . ." If this be taken as a rule contrary to what is said here, that case must yield to the older decisions of this court and of the Supreme Court.

For an excellent study on the question of intention in actions for defamation of character see 60 Penn. L. Rev. pp. 365-387, 461-481.

■ The Code (Ann. Supp.), § 105-712, provides: "Before any civil action shall be brought because of any publication of a libel in any newspaper, magazine or periodical, the plaintiff shall, within the period of the statute of limitations for such actions and at least five days before instituting such action, give notice in writing to the defendant specifying the article and the statements therein which he claims to be false and defamatory and further stating in said notice what the complaining party claims to be the true state of facts." Six days after the publication of the alleged libel the plaintiff wrote the Augusta Chronicle: "On Sunday, January 12, 1947, you published on the front page of your mail edition the announcement of my engagement to Mr. B. C. Walker. As part of the announcement you published a picture purportedly mine with a baby sitting on the lap of the person that was purportedly my picture and in the picture there is also some man. The picture is not of me and the persons in the picture are unknown to me. You can immediately understand the impression created by a picture of this type. The wording in the picture designates me as Miss Kathryn Ann Beckworth, which is correct, but the picture as to me or my fiance is entirely false." The petition alleged that on Wednesday, January 15, 1947, the newspaper published a correct picture of the plaintiff together with her announcement on the inside pages of the paper without reference to or retraction of the earlier libelous publication. Code (Ann. Supp.) § 105-713 provides: "If it appears upon the trial of any case in which such notice has been given that the article published was true or that the same was privileged, the same shall be governed by all the laws

of Georgia now in force in reference to such actions, and the truth shall be a complete defense and the privileged communication, if there be no malice, as is now provided, shall be a complete defense, but in all other cases if it appears upon the trial that said article was published in good faith, that its publication was due to an honest mistake of the facts; that there were reasonable grounds for believing that the statements in said article were true, and that within 10 days after the service of said notice a full and fair correction or retraction was published in the same editions or corresponding issues of the newspaper, magazine or periodical in which said article appeared and in as conspicuous a place and type as was said original article, then the plaintiff in such case shall recover only such special or actual damages as the plaintiff shows he has sustained." The plaintiff clearly complied with the requirement of notice to the newspaper, while the newspaper did not retract as contemplated by the statute, and therefore the allegation of special damage is not required.

For the foregoing reasons the court did not err in overruling the general demurrer.

Pursuant to the act of the General Assembly, approved March 8, 1945 (Ga. L. 1945, p. 232), requiring that the whole court consider any case in which one of the judges of a division may dissent, this case was considered and decided by the court as a whole.

*Judgment affirmed. Sutton, C. J., Gardner and Townsend, JJ., concur. MacIntyre, P. J. and Parker, J., dissent.*

PARKER, J., dissenting. This case is here on the overruling of a general demurrer filed by the defendant to the petition of the plaintiff. In considering a general demurrer the pleadings are always construed most strongly against the pleader (the plaintiff in the instant case), and if an inference unfavorable to her right to maintain the action may fairly be drawn from the facts stated in her petition, such inference will prevail in. determining the rights of the parties. "It is an elementary rule of construction, as applied to a pleading, that it is to be construed most strongly against the pleader; and that if an inference unfavorable to the right of a party claiming a right under such a pleading may be fairly drawn from the facts stated therein, such inference will prevail in determining the rights of the parties." *Krueger* v.

*MacDougald,* 148 *Ga.* 429 (96 S. E. 867), *Bowman* v. *Chapman,* 179 *Ga.* 49 (175 S. E. 241, *McEntire* v. *Pangle,* 197 *Ga.* 414 (29 S. E. 2d, 503), and *Hardin* v. *Baynes,* 198 *Ga.* 683 (32 S. E. 2d, 384). This rule of construction was applied by this court in an action for libel in the case of *Ajouelo* v. *Auto-Soler Company,* 61 *Ga. App.* 216 (6 S. E. 2d, 415).

Publication is not reasonably susceptible to two wholly different constructions, one innocent and the other criminal, as I see it, and as I believe the general reading public would ordinarily understand and construe it. The printed words contain merely a marriage announcement in the usual form; and the picture of a young woman with a small child sitting in her lap and a man in the foreground, has no evil implications or imputations whatever. A picture of a child sitting in a woman's lap should not be construed so as to make the child illegitimate and the woman immoral, when any number of innocent and intimate relationships other than that of mother and child could exist between them and may be fairly inferred from the picture. An evil insinuation and construction is derived from no fact at all except that a young child is in a young woman's lap, and such construction is far-fetched, strained, illogical and unreasonable, and especially so when the picture is accompanied by a wedding announcement. Who has ever even heard of a bride-to-be publishing her engagement along with a picture of herself and her child born out of wedlock? What bride-elect ever published her wedding announcement with a group picture of any kind? To ask these questions is to answer them.

It seems to me that the only natural reaction and inference in the normal mind reading the publication would be that it was evidently an error, that the picture and the reading matter did not go together, and that a mistake had been made. Readers who did not know the plaintiff would *think* there had been a mistake, and her friends and acquaintances would *know* it was a mistake. There is nothing in the publication, in the picture or in the words fairly and reasonably considered, alone or together, to justify or authorize any construction importing criminality or immorality, and it falls short of a libel for which an action will lie.

If the publication be construed as containing a covert meaning which may constitute a libel, it is necessary to resort to innuendo to aid in such construction and to sustain the action, but the meaning of the publication cannot be enlarged and extended by an innuendo. And in that case the pleader must allege an intention on the part of the publisher that the publication be understood in its covert sense, and must also allege special damages as no general damages are inferred. *Anderson* v. *Kennedy,* 47 *Ga. App.* 380 (170 S. E. 555); *Watkins* v. *Augusta Chronicle Pub. Co.,* 49 *Ga. App.* 43 (174 S. E. 199); *Estes* v. *Sterchi Bros.,* 50 *Ga. App.* 619 (2) (179 S. E. 222); *Ajouelo* v. *Auto-Soler Co.,* supra; *Mell* v. *Edge,* 68 *Ga. App.* 314 (22 S. E. 2d, 738); *Behre* v. *National Cash Register Co.,* 100 *Ga.* 213 (27 S. E. 986); *Spence* v. *Johnson,* 142 *Ga.* 267 (82 S. E. 646). Neither of these essential allegations as to the intention of the publisher and special damages is made in this case, and for this additional reason the demurrer should have been sustained.

I am authorized by Judge MacIntyre to state that he concurs in this dissent.