37114.   BROWN *v.* LEDGER-ENQUIRER COMPANY.

37124.   GRIMES *v.* LEDGER-ENQUIRER COMPANY.

DECIDED APRIL 16, 1958—REHEARING DENIED MAY 8, 1958.

James H. Fort, Al Williams, for plaintiffs in error.

Foley, Chappell, Kelly & Champion, contra.

NICHOLS, Judge. No Georgia decision directly in point has been located; however, as was said in Pavesich v. New England Life Ins. Co., 122 Ga. 190 (1) (50 S. E. 68, 69 L.R.A. 101, 106 Am. St. R. 104, 2 Ann. C. 561): "The absence, for a long period of time, of a precedent for an asserted right is not conclusive evidence that the right does not exist. Where the case is new in principle, the courts can not give a remedy; but where the case is new only in instance, it is the duty of the courts to give relief by the application of recognized principles." It is well settled that it is libel per se in a newspaper to charge a person falsely with a crime. See Davis v. Macon Telegraph Pub. Co., 93 Ga. App. 633 (92 S. E. 2d 619), and citations. "To publish falsely of another that there are criminal cases pending against him is libelous per se." Witham v. Atlanta Journal, 124 Ga. 688 (2) (53 S. E. 105, 4 L.R.A. (NS) 977). "Where in an action for libel the publication sued on is ambiguous and capable of being understood in a double sense, the one criminal and the other innocent, it is a question for the jury to determine whether or not the publication is susceptible to the criminal or the innocent interpretation under all the facts and attendant circumstances of the publication." Southeastern Newspapers Inc. v. Walker, 76 Ga. App. 57 (1) (44 S. E. 2d 697).

The sole question here for consideration is whether the whole article, including the headline, quoted in the above statement of fact, would, to the average reader, be construed as charging the plaintiffs with being bound over to a higher court for auto theft.

"The headline of an article or paragraph, being so conspicuous as to attract the attention of persons who look casually over a paper without carefully reading all its contents, may in itself inflict very serious injury upon a person, both because it may be the only part of the article which is read, and because it may cast a graver imputation than all the other words following it. There is no doubt that in publications concerning private persons, as well as in all other publications which are claimed to be libelous, the headlines directing attention to the publication may be considered as a part of it, and may even justify a court or jury in regarding the publication as libelous when the body of the article is not necessarily so: Lewis v. Clement, 2 Barn. & Adol. 702; Clement v. Lewis, 7 Moore, 200; 3 Brod. & B. 279; Harvey v. French, 2 Tyrw. 585; 1 Car. & M. 11; 2 Moore & S. 519; Hayes v. Press Co., 127 Pa. St. 642; 14 Am. St. Rep. 874." 15 Am. St. R. 347 (Annotation to McAllister v. Detroit Free Press Co., 76 Mich. 338). See also, 33 Am. Jur. 101, Libel and Slander, § 88.

In Hayes v. Press Co., 127 Pa. St. 642 (18 Atl. 331, 5 L.R.A. 643, 14 Am. St. R. 874), it was held that the headline "Hotel Proprietors Embarrassed," followed by a brief truthful statement that two named persons, who were hotel proprietors, had confessed judgment on a note, when taken into consideration with other allegations of the petition to the effect that the language implied that they were financially embarrassed, presented a jury question as to whether the article, including the headline, constituted libel.

In *Southeastern Newspapers Inc.* v. *Walker,* 76 *Ga. App.* 57, supra, this court held that a jury question was presented where an otherwise innocent announcement of the forthcoming marriage of an unmarried young lady was published by a newspaper under a picture of a young lady with a baby on her lap.

The body of the article in the case sub judice is not libelous unless the headline or caption thereof makes it so. The headline referred to two men being bound over to a higher court in connection with an auto theft, while the body of the article referred to two named men, the plaintiffs, being involved in an automobile wreck. Would the *average* reader conclude that these two

named men mentioned in the article were the two men mentioned in the headline as being bound over to a higher court because of auto theft? or, on the contrary, would the average reader believe that there was no connection between the headline and the body of the article?

As shown above, the purpose of headlines in a newspaper should be to draw attention to the main body of the article, but not by making untruthful statements therein. In the case of Wiley *v.* Oklahoma Press Publishing Co., 106 Okla. 52 (233 Pac. 224, 40 A.L.R. 573), it was held that a headline was libelous which, in effect, charged a father with commending a police officer for killing his son, although in the article itself it showed that the father stated, in effect, to the police officer that he realized the officer was merely doing his duty at the time and that he, the father, could not blame him. These cases illustrate the rule that although the body of the article itself is harmless and absolutely truthful, if the headline used in connection therewith is libelous the fact that a *careful* reader would realize that the headline was false does not protect the party or parties responsible.

In the body of the article under consideration in the present case there is no reference to the named men being bound over to a higher court for auto theft, and this would be readily apparent to the *careful* reader, but whether this would be apparent to a *careful* reader is not the question for decision for the *average* reader is not necessarily a *careful* reader.

While this court cannot hold that, upon proof of the publication and in the absence of proof that the plaintiffs had been bound over to a higher court for auto theft, a finding for the plaintiffs would be demanded, neither can it hold that the article was not, as a matter of law, libelous. The petitions presented jury questions and the judgments of the trial court sustaining the defendant's general demurrers to both petitions must be reversed.

*Judgments reversed. Felton, C. J., and Quillian, J., concur.*