40890. WORLD INSURANCE COMPANY v. PEAVY et al.

*Bryan, Carter, Ansley & Smith, W. Colquitt Carter, John S. Langford, Jr.,* for plaintiff in error.

*Powell, Goldstein, Frazer & Murphy, Frank Love, Jr., John T. Marshall, Nall, Miller, Cadenhead & Dennis, James W. Dorsey,* contra.

JORDAN, Judge. 1. The plaintiff alleged in her petition that she was a duly licensed agent and broker of insurance in Lumpkin, Ga., and that acting pursuant to a brokerage commission agreement between her and the defendant insurance company an application was made by her on April 18, 1961, to the insurance company on behalf of the Stewart-Webster County Farm Group for group life and hospital insurance. The petition further alleged that the defendant insurance company accepted the application and issued policies covering this group effective April 20, 1961; that on or about March 6, 1962, the defendant John Weisner, acting for and on behalf of the defendant insurance company, composed the following letter on the letterhead of the company and mailed same to each of the persons composing the Stewart-Webster County Farm Group:

"On February 9, 1962 a registered letter was sent to Mrs. Daisy H. Peavy informing her that the insurance for the Stewart-Webster County Farm Group would not be renewed by World Insurance Company. She was asked to notify the people concerned that the insurance will expire on April 19, 1962.

"It is very distasteful for us to take this action. However, had we known the true picture prior to accepting this business we certainly would not have accepted this type of group insurance from Mrs. Peavy.

"We do feel that we have a responsibility to you who purchased this insurance in good faith. The Company has therefore authorized changing your coverage without waiting periods, to an individual guaranteed renewable contract of hospital and surgical benefits in the same amount now carried. A Company representative will call on you before April 19, 1962, to explain your rights in this matter. Yours very truly, /s/ John Weisner, General Agent."

The petition alleged that this letter was received by each of the persons in this group and that certain specified portions of the letter were "false and defamatory and, under the circumstances attendant to their publication as set out herein, expressed the covert meaning that the plaintiff had knowingly, dishonestly and falsely misrepresented to and withheld information from the defendant World Insurance Company and the defendant John Weisner concerning the nature of and the persons constituting the Stewart-Webster County Farm Group"; that said statements were falsely and maliciously made by the defendants with the intention to injure plaintiff in her trade, business and occupation as an insurance agent and broker; that as a result of said defamatory statements as set out in the letter plaintiff has been injured in her good name and credit in her trade, business and occupation in that the persons reading said letter construed and understood said words to mean that the plaintiff was guilty of fraudulent and dishonest practices and was unworthy of trust in her trade and occupation. She prayed for $392,000 in general damages, $10,000 special damages resulting from the loss of commissions by cancellation of the group insurance, and $100,000 as punitive damages.

The defendant insurance company contends that the statements contained in the letter are not ambiguous, vague or uncertain and that taking the words used therein in their plain, natural and ordinary meaning the plaintiff has not been libeled or defamed, citing and relying on a line of cases to the effect that where the language complained of is clear, certain and unambiguous, innuendo cannot be used to enlarge upon the meaning of such words. *Park & Iverson v. Piedmont &c. Life Ins. Co.*, 51 Ga. 510; *Central of Ga. R. Co. v. Sheftall*, 118 Ga.

865 (45 SE 687); *Whitley v. Newman,* 9 Ga. App. 89 (70 SE 686); *Morris v. Evans,* 22 Ga. App. 11 (95 SE 385); *Estes v. Sterchi Bros. Stores, Inc.,* 50 Ga. App. 619 (179 SE 222), and several other cases containing similar language.

This rule, of course, is applicable only in those situations in which the courts can say as a matter of law that the language used is so clear, certain and unambiguous that the only possible construction is that it is not libelous or defamatory. *Garland v. State,* 211 Ga. 44, 46 (84 SE2d 9). And as was stated in the *Sheftall* case, supra, at page 867, "Words which are clearly not defamatory cannot have their natural meaning changed by innuendo. Words which are libelous per se do not need an innuendo. But between these two extremes are found many expressions which may be ambiguous, and the real meaning can then be explained by reference to the circumstances. It is for the jury, in such instances, to say whether, in view of all the facts, the writing was libelous."

In looking at the bare words used in the letter alleged to be libelous, we cannot say that they are libelous per se. Neither can we conclude that they are so clear, definite and unambiguous as to be subject to the sole construction that they are not libelous. We think the language used in this letter, written under the facts and circumstances alleged in the petition, bring it within the category falling between these two extremes, leaving it solely within the province of a jury to make the determination of whether or not the writing is libelous.

In *Holmes v. Clisby,* 118 Ga. 820, 823 (45 SE 684) the court said: "And whenever a publication is susceptible of two constructions, one of which would make it libelous and the other not, it is for the jury to say whether the words are in fact libelous. *Beazley v. Reid,* 68 Ga. 380; *Colvard v. Black,* 110 Ga. 646. The plaintiff cannot by innuendo draw from a writing a conclusion not justified by the language used; but it is competent for the plaintiff to explain in this way an ambiguous publication, to point out the intention of the author, and to show wherein the effect of the language was to injure his reputation. *Park v. Insurance Co.,* 51 Ga. 510. And the rule is that a publication must be construed in the light of all the

attending circumstances, the cause and occasion of the publication, and all other extraneous matters which will tend to explain the allusion or point out the person in question. *Colvard v. Black*, 110 Ga. 647. Words harmless in themselves may become libelous when the circumstances under which they are published are such as to convey a covert meaning to the reader reflecting injuriously upon the reputation of the person to whom they refer."

This court recently held that a petition for slander between the same parties herein, *World Ins. Co. v. Peavy*, 110 Ga. App. 527 (139 SE2d 155), did not set forth a cause of action, basing the decision on *Behre v. National Cash Register Co.*, 100 Ga. 213 (1) (27 SE 986, 62 ASR 320) to the effect that in slander cases against a corporation it must affirmatively appear that the agent was expressly directed or authorized by the corporation to speak the words in question. We cite Headnote 2 in the same case as authority for the conclusion we reach here.

The article complained of as libelous in the *Behre* case, supra, was as follows: "Mr. Chas. H. Behre is no longer connected with the National Cash Register Company, and has not been since August, 1893. Any contracts made by him for the company will be void. [Signed] J. Block, Agent, National Cash Register Company." In commenting upon this publication the court said at page 215: "The words complained of may be literally true—the statement in the first sentence as a matter of fact, and the statement in the second sentence as a matter of law. If the words were published in good faith for the purpose of protecting the interest of the defendant, no liability would flow from their publication. They are not libelous per se; but the averment as to the intention with which the defendant caused them to be published and the effect which they have upon anyone reading them makes them libelous. The impression created upon the mind of anyone reading this notice is, that the plaintiff is seeking to impose himself upon the trading public as the agent of the defendant, and that through that means he is attempting to defraud the persons with whom he comes in contact in connection with the sale of the goods of the character sold by the defendant. The distinct allegation being that this was

false and the words quoted above being, in effect, an allegation of malice, the petition sets forth a cause of action."

The court in the *Behre* case, supra, quoted with approval the following language from D. D. Maynard v. Fireman's Fund Insurance Company, 47 Cal. 207, 209: "Words, which on their face appear to be entirely harmless, may, under certain circumstances, convey a covert meaning, wholly different from the ordinary and natural interpretation usually put upon them. To render such words actionable, it is necessary for the pleader to aver that the author of the libel intended them to be understood, and that they were in fact understood by those who read them, in their covert sense."

The letter informing the members of the group of the expiration of the policy, stating that such action was "very distasteful" and that had "we known the true picture prior to accepting this business we certainly would not have accepted this type of group insurance from Mrs. Peavy" is easily capable of the construction that the plaintiff had dealt fraudulently and dishonestly in securing this insurance coverage from the defendant insurance company. The further reference in the letter to the defendant's responsibility "to you who purchased this insurance in good faith" is subject to the inference that bad faith was involved in writing the policy and that such flowed from the plaintiff to the defendant.

We think the publication complained of here is reasonably subject to the construction alleged in the plaintiff's petition and that under the authorities cited herein, the trial court did not err in overruling the general demurrers thereto.

2. Special demurrers 6 and 7 attack paragraph 13 of the petition on the ground that the alleged libelous language set out therein is not vague, uncertain or ambiguous and therefore plaintiff cannot by innuendo or strained construction enlarge upon its meaning. This question has been answered in Division 1 above.

3. Special demurrer 10 attacks paragraph 14 of the petition on the ground that it fails to allege the details surrounding the express authority given by the defendant insurance company to its agent Weisner. While an allegation of express authority

is essential in slander cases, *World Ins. Co. v. Peavy,* supra, it is not required in libel cases. "But in cases of libel the rule is different, and it is not essential to the cause of action that express or direct authority of the agent to utter the libel should be shown. So, in a suit against a corporation for a libel by one of its agents, where the libelous matter is otherwise sufficiently set forth, an allegation that the libel was uttered by the agent within the scope of the company's business and in the course of the agent's employment is sufficient to charge the corporation." *Ivins v. Louisville &c. R. Co.,* 37 Ga. App. 684 (5) (141 SE 423); *Behre v. National Cash Register Co.,* 100 Ga. 213, supra. This demurrer was properly overruled.

4. Special demurrers 11, 12, 13 and 14 complain of the allegations of defendant's intention to injure plaintiff and the allegation of express malice in the publication of the letter. In view of the allegations of the petition setting forth all the circumstances under which the letter was written and published, we think these demurrers are without merit and that the trial court properly overruled them.

*Judgment affirmed. Bell, P. J., and Eberhardt, J., concur.*