A93A0867. ROBERTS et al. v. LANE et al.
(435 SE2d 227)

BEASLEY, Presiding Judge.

It is first necessary to clarify the posture of the parties in this case and who is appealing what. It involves activities with respect to the Robertses' premises, which are owned by Mrs. Roberts. Lane's property abuts it, as does that of Thomas Robertson.

Lane brought this suit against Mr. and Mrs. Roberts, alleging libel and slander. They counterclaimed against Lane for water run-off onto the Robertses' premises and for abusive litigation. They also cross-claimed against the two Robertson boys and their father Thomas Robertson for conspiracy to harass and intimidate the Robertses and for damage to the Robertses' property. The boys, "through their next friend and father" Thomas counterclaimed against Mr. Roberts, alleging slander and harassment and intimida-

tion.[1] The father, Thomas, who is named as an appellee, is named as such only in his capacity as next friend and father of the two boys, in whose behalf a judgment in the amount of $5,837 was entered. Thomas Robertson suffered no judgment against him, brought no claim against anyone on his own behalf, and was awarded nothing. He was in effect just a defendant in Mr. and Mrs. Roberts' cross-claim.

Thus the verdict and judgment in Thomas Robertson's favor relates to the $5,837 judgment for the boys against Mr. and Mrs. Roberts for defamation. This includes $3,837 attorney fees. The other verdicts were $21,348 plus court costs for Lane against Mr. and Mrs. Roberts for defamation, and $100 for Mrs. Roberts against the two boys for trespass to personal property.

The appellants are only Mr. and Mrs. Roberts. Although the two boys suffered a judgment against them, they do not appeal. Appellees are plaintiff/counter-defendant Lane and the two boys, counter-defendants.

1. Barbara Roberts contends the trial court erred in denying her motions for directed verdict, arguing there is no evidence that she uttered or otherwise published defamatory remarks about Lane or the Robertson boys.

The evidence in favor of the verdict is as follows: Frank Roberts informed others, via correspondence and verbal exchange, that Lane is a "drunk and freak of nature"; that Lane "[runs] off into the woods to fondle little boys" and that the boys committed illegal sexual acts. Frank Roberts published these and other malignant comments out of vengeance precipitated by alleged trespassing incidents by the Robertson family and a dispute culminating in a lawsuit between Barbara Roberts and Lane.

Publication is indispensable to recovery for libel or slander. OCGA § 51-5-1 (b); *Walter v. Davidson*, 214 Ga. 187, 189 (1), 190 (104 SE2d 113) (1958). A defamatory matter is published as soon as it is communicated to any person other than the impugned party. OCGA § 51-5-3; *Pavlovski v. Thornton*, 89 Ga. 829 (2) (15 SE 822) (1892).

There is no evidence that Barbara Roberts uttered or otherwise published defamatory remarks about Lane or the Robertson boys. Nonetheless, Lane and Thomas Robertson contend there is evidence that the Robertses entered into a conspiracy to impugn the reputations of Thad Lane and the Robertson children.

"[O]ne who has not uttered slanderous words may nevertheless be liable therefor if they were uttered by another in furtherance of a conspiracy to which he was a party. 25 Cyc. 434. The conspiracy may

---

[1] Apparently it is by way of the pretrial order that Mrs. Roberts is added.

be established by showing that both parties were present when the slanderous words were uttered, and that their utterance by one of the parties was with the consent of the other and in pursuance of a common design and purpose." *Lanham v. Keys*, 31 Ga. App. 635 (1) (121 SE 856) (1923).

Barbara Roberts and Lane were involved in a legal dispute over riparian rights on their adjoining property when Frank Roberts published defamatory matters (oral and written) about Lane and the Robertson children. Frank Roberts informed his wife that he witnessed the two boys engaging in illegal sexual activity and she was aware of acts of vandalism committed by the Robertson children on her property. However, there is no evidence that Barbara Roberts was present when Frank Roberts uttered malignant remarks about Lane and the boys; there is no evidence that Barbara Roberts directed, affirmed or acquiesced in her husband's libelous conduct; and there is no evidence that Barbara Roberts actually or tacitly entered into a mutual understanding with her husband to impugn Lane or the Robertson boys.

"[T]he law does not authorize a finding that conspiracy exists merely because of some speculative suspicion and while the question of conspiracy is generally one for a jury, the mere fact that conspiracy has been alleged does not require submission of the question to a jury where there is no evidence of record that the alleged conspirators either positively or tacitly came to a mutual understanding to accomplish an unlawful end or to accomplish a lawful end by an unlawful means. [Cit.]" *First Fed. Savings Bank v. Hart*, 185 Ga. App. 304, 305 (2) (363 SE2d 832) (1987). There is ample evidence to sustain a finding that the Robertses share animosity for Lane and the Robertson children. There is no evidence showing that Barbara Roberts entered into a conspiracy with her husband to impugn Lane and the Robertson children by accusing them of criminal acts.

The trial court erred in denying Barbara Roberts' motions for directed verdict with regard to the defamation claims.

2. Frank Roberts contends the trial court erred in denying his motion for directed verdict as to the libel claims, arguing there is no evidence that defamatory correspondence he posted to Lane's attorney was published. This contention is not supported by the record.

As cited earlier, "[a] libel is published as soon as it is communicated to any person other than the party libeled." OCGA § 51-5-3. Frank Roberts admitted that he posted three "mailgrams" to Lane's attorney and Lane testified that his attorney turned the correspondence over to him for examination. This testimony is circumstantial evidence that the defamatory correspondence was published to a party other than Lane and is sufficient to sustain the verdicts against Frank Roberts. See *Brandon v. Ark. Fuel-Oil Co.*, 64 Ga. App. 139,

146 (12 SE2d 414) (1940).

3. Recognizing that the judgment against Barbara Roberts may be reversed, Frank Roberts contends he is entitled to a new trial because of the jury's joint and several award of punitive damages and attorney fees.

*Hubacher v. Volkswagen Central,* 164 Ga. App. 791, 793 (2) (298 SE2d 533) (1982) (unprecedential), held that an award of punitive damages or attorney fees against all defendants cannot stand undisturbed if a co-defendant escapes liability via a judgment n.o.v. The court reasoned that the jury may have based such damages, in whole or in part, on the conduct of the exonerated co-defendant.

We conclude now on appeal that there is no evidence linking Mrs. Roberts to the defamation, but the jury erroneously *did* link her and returned a verdict against both Mr. and Mrs. Roberts jointly and severally for compensatory and punitive damages and attorney fees. The jury did so on the erroneous theory that she was jointly liable as her husband's principal or co-conspirator.

As in *Hubacher,* supra at 794, "[t]he effect of " reversing the judgment against Mrs. Roberts "is to impose attorney fees and to assess punitive damages that the jury may have based, in whole or in part, upon the acts or intentions of " Mrs. Roberts. The jury might not have awarded the *total* amount of attorney fees or the sum of $10,000 for punitive damages if they were considering Mr. Roberts' liability alone. He is entitled to a new trial with regard only to these damages.

*Judgment affirmed in part and reversed in part. Pope, C. J., Birdsong, P. J., Cooper, Andrews, Johnson, Blackburn and Smith, JJ., concur. McMurray, P. J., concurs in part and dissents in part.*

McMURRAY, Presiding Judge, concurring in part and dissenting in part.

I agree with all that is said in Divisions 1 and 2 of the majority opinion. However, I respectfully dissent as to Division 3 as it is my view that *Hubacher v. Volkswagen Central,* 164 Ga. App. 791, 793 (2) (298 SE2d 533), does not require a new trial.[2]

In *Hubacher v. Volkswagen Central,* 164 Ga. App. 791, 793 (2), supra, Volkswagen Central sold a car to the Lawhorns informing them that the vehicle's doors, roof and rear quarter panel had been repaired. Volkswagen Central did not tell the Lawhorns that the car had been totally rebuilt and the Lawhorns sold the car to Hubacher without disclosing that the car had been damaged. Hubacher later discovered that the vehicle had been totally rebuilt and sued the

---

[2] I note that *Hubacher v. Volkswagen Central,* 164 Ga. App. 791, 793 (2), supra, is a two-judge decision and is therefore not mandatory authority.

Lawhorns and Volkswagen Central for fraud. A jury returned a verdict for Hubacher, awarding actual damages, punitive damages and attorney fees. However, the trial court granted Volkswagen Central's motion for judgment n.o.v. and, on appeal, this court affirmed, holding that Hubacher could not recover against Volkswagen Central because Hubacher did not rely on the fraudulent representations of Volkswagen Central. Id. at 792 (1). This court then held that the award of punitive damages and attorney fees against the Lawhorns "cannot stand undisturbed" since the award of punitive damages and attorney fees may have been erroneously based, in whole or in part, upon the malignant conduct of Volkswagen Central. Id. at 793 (2). The *Hubacher* panel then affirmed the judgment upon condition that Hubacher write-off the jury's award of punitive damages and attorney fees or face a new trial, apparently on all issues.

It is my view that the logic in *Hubacher v. Volkswagen Central*, 164 Ga. App. 791, supra, does not control the case sub judice. In *Hubacher*, the tortious conduct of Volkswagen Central and that of the Lawhorns were completely separate and distinct, i.e., Volkswagen Central misled the Lawhorns and the Lawhorns misled Hubacher. However, in the case sub judice, there is no evidence that Barbara T. Roberts committed a tortious act which could have in any way confused the jury's verdict. The jury's award of punitive damages and attorney fees could therefore have only been attributable to the tortious conduct of Frank Roberts.[3] Consequently, it is my view that a new trial is not warranted. In fact, my assessment of the record reveals that another trial will be nothing more than a replay of evidence already heard and considered by the finder of fact.

Since the jury's verdict as to punitive damages and attorney fees is authorized by the evidence, I would affirm the judgment entered upon the jury's verdict.

DECIDED JULY 8, 1993 —
RECONSIDERATION DENIED JULY 30, 1993

*Alderman, Green & Hamby, Brady D. Green*, for appellants.
*Hartley, Rowe & Fowler, Joseph H. Fowler*, for appellees.

---

[3] The testimony of Frank Roberts and Barbara T. Roberts reveals that the defamatory conduct of Frank Roberts was stirred, in whole or in part, by animosity and anxiety of Barbara T. Roberts, allegedly brought on by odious conduct by Thad Lane and the Robertson boys. This evidence may authorize a finding that Barbara T. Roberts excited her husband to anger, but it does not show that she was a participant in the defamatory conduct of Frank Roberts.