BENNETT *v.* THE STATE.

Although when no evidence as to the prisoner's character has been introduced, his counsel argues that his character and reputation are good, it is reversible error to allow the State's counsel to argue in reply, over objection, that as the prisoner has not introduced such evidence, it must be because he has no such reputation.

December 23, 1890. Argued at the last term.

| 86 | 401 |
|----|-----|
| 87 | 16 |
| 86 | 401 |
| 92 | 448 |
| 86 | 401 |
| 102 | 340 |
| 86 | 401 |
| 113 | 1064 |
| 86 | 401 |
| 115 | 720 |

Practice. Trials. Argument of counsel. Before Judge LUMPKIN. Hart superior court. September adjourned term, 1889.

Reported in the decision.

McCURRY & PROFFITT, for plaintiff in error.

W. M. HOWARD, solicitor-general, by HARRISON & PEEPLES, *contra.*

SIMMONS, Justice.

Bennett was tried for the offence of burglary, and was convicted. He made a motion for a new trial, which was refused, and he excepted. One of the grounds of

the motion is that the prosecuting attorney, in the clos-
ing argument, argued that the defendant had a bad
character; that he had a right to prove his good char-
acter and had not done so. The defendant objected to
this and requested the court not to allow it. The court
stated that the argument was proper and he would
allow it to proceed. Following is a note which the
court attaches to this ground:

"The first ground of the motion for new trial is true
with the following additional statement in connection
with what occurred and in explanation thereof: In his
argument before the jury defendant's counsel had stated
and reiterated repeatedly, (1) his personal conviction
that the defendant was an honest man and a man of
good character, and that nothing criminal had ever
before been charged against him; (2) that the defend-
ant was a man of as good a character as Bowers, one
of the State's witnesses, and stood as well in the com-
munity as Bowers did; (3) that Duncan, a witness for
the State, was a man of good character and had em-
ployed defendant for six years, and that Duncan would
not have done so if defendant was a thief; and (4) that
defendant stood well among his neighbors and was re-
garded where he lived as an honest man and one of
good character, so far as the evidence in this case dis-
closed. In replying to these arguments the solicitor-
general said, in doubtful cases, in cases where the State
had proved many suspicious facts and circumstances
against a defendant, the law allowed him to prove his
good character, and that if this defendant was a man of
such good character and reputation as his counsel had
insisted he was, why had he not called some of his
neighbors to prove his good character? and that his
failure to do so must be because he had no such good
reputation. When the point was made that this argu-
ment was improper, the court refused to interrupt the
solicitor-general, because of the fact that defendant's
counsel had made the statements above mentioned.

We think the court erred in allowing the State's
counsel to argue before the jury, after objection by the
prisoner's counsel, that the defendant's character was

bad because he had a right to prove his good character and had not done so. The accused is not bound to put his character in issue. If he omits to do so, no inference of his guilt can be drawn therefrom by the jury. The general rule is, that the omission to show good character does not justify a presumption that the character is bad, from which an inference of guilt can be drawn. People v. Godine, 1 Denio, 281; Ackley v. People, 9 Barb. 609; State v. Dockstader, 42 Iowa, 436; State v. O'Neill, 7 Ired. 251; State v. Upham, 38 Me. 261; Stephens v. State, 20 Tex. App. 255; People v. White, 24 Wend. 520; Donoghoe v. People, 6 Parker's Crim. Rep. 120; Cluck v. State, 40 Ind. 270; Fletcher v. State, 49 Ind. 134; 1 Bish. Cr. Pro. §1119.

The State is bound to prove the guilt of a defendant beyond a reasonable doubt, whether his character has been good or bad. It does not follow because an accused person may have a bad character, that he is guilty of the particular offence for which he is being tried. Counsel both for the State and the accused, should be compelled by the court to confine themselves in their arguments to the evidence in the case. In this State the defendant has a right to make a statement of his defence to the jury, and it has been held in several cases that the State's counsel, where the defendant omitted to make such statement, had no right to argue that fact to the jury. Nor can the jury infer guilt from the defendant's omission to make the statement. If the State's counsel is not allowed to argue this fact to the jury, why should he be permitted to argue that the omission to prove good character is evidence of bad character? Why should the jury be permitted to infer that his character is bad because he has omitted to prove good character?

The trial judge, however, certifies that he permitted the State's counsel to make this argument because the

prisoner's counsel had argued to the jury that the prisoner had a good character, etc.; meaning thereby that as the prisoner's counsel had argued to the jury a fact which was not in evidence, it was proper to allow the State's counsel to reply to that argument and to say that the prisoner's character was bad because he had a right to prove good character and had failed to do so. In State v. Upham, 38 Me. 261 (supra), the indictment charged the accused with having in his possession counterfeit bank-bills. He offered no evidence of his general good character, but his counsel argued to the jury that from his position in society as postmaster, his character ought to avail him in aid of the common presumption of innocence. Counsel for the government argued that the want of such testimony authorized the jury to infer that his character was bad. Refusal of the court to instruct the jury, upon request, that the failure to offer such proof afforded no inference of guilt or that the character was not good, was held error.

There are many authorities which hold that the law presumes that a defendant has a good character. This was held in the case of Stephens v. The State, 20 Tex. App. 269; and in the case of Cluck v. The State, supra, the Supreme Court of Indiana held that the law presumes that every man has a good character, and that it would have been competent for counsel to have commented on such presumption. This rule is also laid down in Sackett on Instructions to Juries, p. 651. In the case of Goggans v. Monroe, 31 Ga. 331, the defendant's counsel in his argument insisted that the plaintiff's character was bad; whereupon counsel for the plaintiff requested the court to charge the jury that the law presumed the plaintiff to be of good character until the contrary was shown by proof. The trial judge refused to charge as requested, and this court held that "it was error in the court to refuse to charge on request

that the law presumes the character of the party to be good until the contrary is proven." JENKINS, J., in delivering the opinion, said: "Defendant's counsel having argued that plaintiff's character was bad, and this argument being likely to prejudice his case before the jury, he was entitled to the *legal* presumption that, in the absence of evidence proving the contrary, his character was good; and it was error in the court to refuse to charge, on request, that the law did so presume."

But whether this be true or not, we hold that the court erred in allowing the State's counsel, over the objection of the prisoner's counsel, to make this argument to the jury, although the latter had first violated the rules of court by going outside of the evidence. The fact that the prisoner's counsel had violated the rule, would not authorize the State's counsel to do likewise. To hold that because counsel on one side violates a rule of court in his address to the jury by making statements outside of the evidence, the opposing counsel has the right to violate the rule in like manner, over objections of opposing counsel, would be to turn a court, where justice should be administered according to the rules of evidence and of law, into a town-meeting. We could as well hold that if the prisoner's counsel introduces illegal evidence, the State's counsel can reply by introducing other illegal evidence; and this, we have held, cannot be done. *Woolfolk* v. *The State*, 81 *Ga.* 551. In the case of *Mitchum* v. *The State*, 11 *Ga.* 615, one of the grounds of the motion for a new trial was, that the court erred in allowing the solicitor-general, in the concluding argument, although objected to by counsel for the accused, to support the testimony of *Eilands* by stating that he was an unwilling witness for the State, that he had refused to come under *sub-pœna*, and was brought by arrest under attachment,

none of which was in evidence before the jury, the court remarking that it was allowable because B. K. Harrison, one of the defendant's counsel, in his argument to the jury, had stated that *Eilands* was locked up on the Sabbath before the trial with the father-in-law of the deceased and the prosecutor, drinking with them, none of which was in evidence, Mr. Harrison contending that *Eilands* was a willing and a bribed witness. In the opinion (p. 628), NISBET, J., in dealing with this ground said: "The seventh exception is founded on the refusal of the court to restrain the solicitor-general, although requested so to do by counsel for the prisoner, from commenting on facts not in evidence, in his concluding speech to the jury. This we think was an error. We have had occasion to consider the habit of counsel in addressing the jury, of commenting upon matters not proven and not growing out of the pleading, before, and have been content with visiting it with a decided and emphatic disapproval. *Berry* v. *The State*, 10 *Ga.* 522, 523. We entertain no shadow of doubt as to the necessity of pronouncing it, as we now do, illegal and highly prejudicial to a fair and just administration of the rights of parties, either on the criminal or civil side of the court. It is the duty of the court to prevent such comments, and in all cases where this is not done, provided the court is requested to prevent them, we shall hold, as we rule in this case, that it is good ground for a new trial. There was, it is true, some excuse for the license conceded to the solicitor-general in this case, in the fact that counsel for the prisoner had already taken the same liberty in his argument to the jury. The solicitor-general, no doubt, felt called upon by the obligations of his office, to remove any wrong impression which the argument of counsel for the prisoner had made as to the credibility of the witness. Disregarding, however, these

things, we have no option but to make this case the occasion of establishing a rule upon this subject. In doing this, I am sure that it is scarcely necessary to say that we disclaim any purpose of inflicting a personal censure upon the able and upright judge who presided in the cause, or upon the counsel and the prosecuting officer. If no other reason existed for this disclaimer (and there are many), sufficient reason would be found in the usage of our courts, which has gone very far to sanction the habit referred to. Its practical tendency is bad upon the court, the bar and the jury. If this were all, perhaps our duty would stop with the expression of such an opinion; but this is not all, for in our judgment it is violative of the rights of the citizen litigant in the courts of justice; and if so, we are not at liberty to stop short of making it cause for a new trial." See also, upon the same line, Tucker *v.* Henniker, 41 N. H. 317; State *v.* Upham, 38 Me. 261; School Town of Hennies *v.* Vogal, 87 Ill. 242; Fox *v.* The People, 95 Ill. 71; Rochester *v.* Shaw, 100 Ind. 268; *Forsyth* v. *Cothran*, 61 *Ga.* 278; *Johnson* v. *Slappey,* 85 *Ga.* 576, 11 S. E. Rep. 862; *Augusta and Summerville R. Co.* v. *Randall*, 85 *Ga.* 298; 11 S. E. Rep. 706; Commonwealth *v.* Scott, 123 Mass. 239, 25 Am. Rep. 87; McDonald v. People, 9 Am. St. Rep. 547, and note.

The proper practice, according to the majority of the cases above cited, would have been for the prisoner's counsel to have requested the court to charge the law contrary to that as asserted by the solicitor-general in his address to the jury. The record shows, however, that he did object to the remarks of the solicitor-general and requested the court to stop him, but that the court refused to do so, holding that the remarks were proper, and thereby giving the jury to understand that the rule of law laid down by the solicitor-general

was the correct one, and that they might make the inferences claimed by the prosecuting officer. Under this state of facts it was scarcely necessary for the prisoner's counsel to request the court to charge a contrary view of the law. This being a very close case on the facts, and the language of the State's counsel being calculated to prejudice the jury against the defendant, we reverse the judgment of the court below in refusing to grant a new trial upon this ground.

*Judgment reversed.*