## 27875. JONES v. POOLE.

DECIDED MARCH 15, 1940. REHEARING DENIED MARCH 23, 1940.

*Curry & Curry,* for plaintiff in error.

*Henry T. Chance Jr., Frederick B. Tyler,* contra.

PER CURIAM. Mrs. Lillian B. Poole brought an action in damages for slander against Johnny J. Jones. She alleged that Jones said to John F. Watson, when Watson inquired about the plaintiff's "Tourist Home," "Mrs. Poole does not run a moral house; her house is not morally clean and I would not recommend it to you." The petition further alleged that on another occasion, when Mrs. Julia Gay, accompanied by her minor daughter, asked Jones about said "Tourist Home," he made the following statement: "Mrs. Poole does not run a moral house; her house is not morally clean, I would not recommend it as a fit place for you and your daughter to spend the night;" that Mrs. Gay then asked him: "Does Mrs. Poole keep girls there for immoral purposes?" and that Jones replied, "I'd rather not say." The petition alleged that the statements of the defendant "were false, malicious, and defamatory implications imputing that petitioner was guilty of running, conducting, operating, and was the proprietor of, a lewd, immoral house, open to the public for adultery and fornication, and the operation of such a house is under the criminal Code of Georgia a crime punishable by law;" and the defendant, in making such false and malicious statements to said Watson and Gay, intended to impute and did impute that petitioner was operating a lewd house, open to the public, for fornication and adultery, and said Watson and Gay did so understand and believe; that said imputations and charges of such a repulsive and debasing act as that of being the

operator of a lewd house "would exclude petitioner from society and bring her into public hate, contempt, and ridicule." By an amendment to the petition the claim for special damages was eliminated, and only general damages were sued for. The following general demurrer was filed to the amended petition: "1. No cause of action against him [the defendant] is set out therein. 2. The statements complained of as made by defendant do not impute a crime to plaintiff. 3. The statements alleged as made by defendant in response to inquiry as that plaintiff 'does not run a moral house, her house is not morally clean,' and 'I would not recommend it to you,' and 'I would not recommend it as a fit place for you and your daughter to spend the night,' &c, not only do not impute any crime to plaintiff, but it is evident from the allegations of the petition that immediately follow that none such were intended; thus, when defendant was asked, 'does Mrs. Poole keep girls there for immoral purposes?' the petition alleges that defendant replied, 'I'd rather not say.' All of which shows that no crime was imputed to plaintiff by defendant, but a refutation of crime." The demurrer was overruled, and exception was taken to that judgment.

"Words which are clearly not defamatory can not have their meaning enlarged by innuendo. Words which are libelous per se need no innuendo. Between these extremes lies the case of ambiguous language, where it is for the jury to say whether, in view of the facts charged, the publication amounted to a libel." *Central of Ga. Ry. Co.* v. *Sheftall,* 118 *Ga.* 865 (45 S. E. 687). Whenever the words spoken or published are susceptible of two constructions, one of which would make them libelous and the other not, it is for the jury to say whether in fact the words are libelous. *Holmes* v. *Clisby,* 118 *Ga.* 820, 823 (45 S. E. 684); *Beazley* v. *Reid,* 68 *Ga.* 380; *Colvard* v. *Black,* 110 *Ga.* 642, 648 (36 S. E. 80); *Park* v. *Piedmont & Arlington Life Ins. Co.,* 51 *Ga.* 510, 513. "For a defamatory oral utterance to be slanderous as imputing a crime, the statement must not only be such as may convey to the auditor the impression that the crime in question is being charged, but it must be couched in such language as might reasonably be expected to convey that meaning to any one who happened to hear the utterance." *Whitley* v. *Newman,* 9 *Ga. App.* 89 (6) (70 S. E. 686). The defendant was alleged to be a next-door competitor

of the plaintiff. The statements alleged to have been made were made to prospective guests who were inquiring with reference to the "Tourist Home" conducted by the plaintiff. The defendant did not say the house was not clean, in the sense of being dirty or unsanitary, but did say that it was "morally" dirty. Moral, as defined in Webster's International Dictionary, means "manner, custom, habit, way of life, conduct." Immoral has, among its other meanings, "licentious misconduct, vice." We think to say of a house that it is not morally clean and not a fit place for a woman and her daughter to spend the night may reasonably be construed to mean that it is an immoral house. When the statement is made that such and such a house is an "immoral house," we think the meaning which may be reasonably concluded from such language is that it is a lewd house, or in the vernacular of another generation a "whore house," and that such meaning would be the one which would be drawn by a majority of hearers. In answer to the direct question by one of the persons to whom the statement was alleged to have been made, "Does Mrs. Poole keep girls there for immoral purposes?" the reply was alleged to be "I'd rather not say." If he had not been intending to convey such a meaning, he could have said so. He did not disclaim that such was his meaning. He deliberately and intentionally left the questioner under the impression that such was his meaning, thus adding insult to injury. To our minds, the statements made are perfect illustrations of innuendo, whose other meaning is acts done "by hinting, by insinuation, by intimation." Like Pope, we may say:

"Damn with faint praise, assent with civil leer,
And without sneering teach the rest to sneer;
Willing to wound, and yet afraid to strike,
Just hint a fault, and hesitate dislike."

Only in this there was no faint praise in the present language, but words whose meaning and use were such that a court may not say they are clearly harmless, but which a jury may say have the meaning alleged. The demurrer was properly overruled. The evidence supported the verdict.

*Judgment affirmed. Guerry and MacIntyre, JJ., concur.*

BROYLES, C. J., dissenting. The petition, properly construed (most strongly against the pleader), is based solely on the contention that the alleged slanderous statements of the defendant

charged or imputed that the plaintiff was guilty of the specific crime of operating a lewd house for the practice of fornication or adultery. No special damages were alleged in the petition; and "if merely fraud, dishonesty, *immorality,* or *vice* be imputed, no action lies without proof of *special* damage." (Italics mine.) *Roberts* v. *Ramsey,* 86 *Ga.* 432 (12 S. E. 644) ; *Ford* v. *Lamb,* 116 *Ga.* 655 (42 S. E. 998) ; *Morris* v. *Evans,* 22 *Ga. App.* 11 (95 S. E. 385). In the instant case, the language *as used by the defendant* did not charge or impute that the plaintiff was guilty of the specific crime of operating a lewd house for the practice of fornication or adultery. On the contrary, when Mrs. Gay asked the defendant, "Does Mrs. Poole keep girls there for immoral purposes?" he replied, "I'd rather not say." We think this was tantamount to saying, "I decline to make such a charge against Mrs. Poole." But, by innuendo, the petition alleges that the defendant by his language intended to charge and did charge that the plaintiff was maintaining a lewd house for the practice of fornication or adultery, and that his hearers so understood him. However, it is well settled that the true scope and meaning of alleged slanderous statements "can not be enlarged or restricted by innuendo." *Whitley* v. *Newman,* 9 *Ga. App.* 89 (70 S. E. 686) ; *Park* v. *Piedmont Ins. Co.,* 51 *Ga.* 510; *Spence* v. *Johnson,* 142 *Ga.* 267 (82 S. E. 646, Ann. Cas. 1916A, 1195) ; *Morris* v. *Evans,* supra. It is apparent in the instant case that the scope and meaning of the statements of the defendant were enlarged by the innuendo of the petition; and that, without such innuendo, the petition fails to set out a cause of action. The statement that plaintiff "does not run a moral house, her house is not morally clean," etc., while slanderous in the general sense, if falsely made, can not be held to charge or impute that she was guilty of the *specific* crime of operating a lewd house for the practice of fornication or adultery. For instance, a person operating a gaming house in Georgia would be operating an immoral house, and such house would not be morally clean, and if such house were a hotel or tourist camp, it would not be a fit place for a lady and her daughter to spend the night. Since the statements of the defendant did not charge or impute that the plaintiff was maintaining a lewd house for the practice of fornication or adultery, but merely that she was maintaining or running an *immoral* house, she could not recover general damages (*Roberts* v. *Ramsey,* supra) ;

and no special damages being sued for, the court erred in overruling the general demurrer to the petition. That error rendered the further proceedings nugatory.