34479. RALLS *v.* THE STATE.

DECIDED FEBRUARY 21, 1953.

*Williams & Freeman*, for plaintiff in error.

*Benjamin B. Garland, Solicitor-General, A. M. Zellner, Hugh D. Sosebee*, contra.

GARDNER, P. J. 1. This was a close case on the evidence. The jury could very well have rendered a verdict of not guilty, finding that the motion of the defendant in inflicting the mortal wounds on the deceased was justifiable and in protection of her life. The evidence for the State tended to show that the body of the deceased was discovered about two or three hundred feet from his home by the undertaker, that the deceased had been stabbed and cut, one wound directly through the heart, and one on his back, and that stabbing was the cause of his death, he having been stabbed through the heart and lungs. Most of the wounds were on the left arm and left back and in the heart, that is most of them were on the left side of the body, in the front and the back. When the body was seen by the sheriff, it did not have any shoes on, one being in the house and the other 261 feet from the house up the road towards the body. The sheriff saw Molly Ralls that Sunday morning (July 1, 1951, when the homicide is alleged to have occurred) at Mr. Treadwell's house, and she freely and voluntarily said she cut the deceased. She told the sheriff that she was fixing supper and her husband came into the kitchen, and "one word brought on another and he throwed a big andiron at her," and "she said she got a butcher knife then and they started tusseling and they fell down on the floor, and she cut him." She also said he got a rifle and pointed it at her and said he was going to kill her. The sheriff said he found no fingerprints on the rifle. The sheriff stated that the little boy said he pulled the knife out of his daddy's back and ran up the road and threw the knife into the

weeds, but it was not found. It appeared that there had been a little blood on the floor and an effort had been made to clean it up. This was in the front room where the front door was. Without the admission by the defendant that the deceased threw an andiron at her and she and the deceased started tusseling and fell to the floor and she cut him, and the testimony of the 14-year-old son of the defendant, there was nothing directly showing that the defendant did the killing. This boy testified that his father had been drinking; that the deceased threw the fire dog at the defendant; and that his mother "got up and run and grabbed the knife off the mantlepiece. While they were rolling on the floor, before she got the knife, daddy was hitting her and scratching her and choking her. He was hitting her with his hands and choking her around the neck. . . After that she got up and grabbed the knife off the mantlepiece and went to cutting him . . I pulled the knife out of his back and he got up; and I run up the road and throwed the knife out in the weeds. He got up and run down the road." From this and all other evidence the jury could have returned a verdict based on justifiable homicide of not guilty. It was highly important, therefore, that no prejudicial matter be injected into the trial of this case, and that the jury consider nothing but competent and material evidence and facts.

This court feels that the statement of the solicitor, in the form of a question, that the coroner's jury had recommended that the defendant be tried for the murder of her husband, was in effect prejudicial, even though the witness failed to reply, and by reason of the promptness of the defendant's counsel in interposing his objection and the ruling by the court that such question was improper, was such as to require the grant of a mistrial. The defendant's counsel promptly moved for a mistrial. The court overruled the same, simply stating to the jury that they were to try the case on the evidence only, and not to consider anything done by the coroner's jury. "Where counsel in the hearing of the jury make statements of prejudicial matters which are not in evidence, it is the duty of the court to interpose and prevent the same; and, on objection made, he shall also rebuke the counsel, and by all needful and proper instructions to the jury endeavor to remove the improper im-

pression from their minds; or, in his discretion, he may order a mistrial if the plaintiff's attorney is the offender." Code, § 81-1009. The solicitor occupies the status in a criminal case of the plaintiff's attorney in the above Code provision. The statement here was clearly inadmissible and highly prejudicial. Did the court sufficiently instruct the jury, and did the court abuse its discretion in overruling the motion for mistrial promptly made by the defendant's counsel? The objectionable matter, while in the form of a question to a witness, who had been a member of the coroner's jury, was in effect a statement by the solicitor-general. The solicitor said, "As a member of that jury (having just asked the witness if he had been a member of the coroner's jury hearing the case, and the witness replying affirmatively), I understand that you and the others recommended that she (the defendant) be held for murder?" In *Ivey* v. *State,* 113 *Ga.* 1062, 1063 (39 S. E. 423, 54 L. R. A. 959) the Supreme Court said: "The solicitor-general appointed to represent the interest of the State in the trial of offenders, does not occupy the position of counsel generally. His duty does not require him to insist upon the conviction of the accused unless the evidence is sufficient to authorize it. His office is quasi-judicial; and while it is his duty, if he honestly believes that the evidence shows the guilt of the accused, to insist upon this view before the jury and to use in his argument all his ability and skill in presenting the case as made by the pleadings and the evidence, still it is under *no circumstances his duty either to go outside of the case and state facts not in evidence or to appeal to the passions or prejudices of the jury.* . . While . . the State is the accuser in criminal cases, it will not permit its representative to use unfair means against the accused, pending the trial, or to comment upon facts not put in evidence, or to make remarks calculated to prejudice the accused in the minds of the jurors." (Italics ours.) See also *Bennett* v. *State,* 86 *Ga.* 401, 405 (12 S. E. 806, 12 L. R. A. 449, 22 Am. St. R. 465); *Mitchum* v. *State,* 11 *Ga.* 615 (7), 628; *Cliett* v. *State,* 46 *Ga. App.* 315, 317 (167 S. E. 610). The courts have consistently ruled that in close cases new trials will be granted on account of such improper and prejudicial occurrences and acts by the solicitor-general. *Manning* v. *State,* 13 *Ga. App.* 709 (79 S. E. 905); *Mit-*

*chell* v. *State,* 17 *Ga. App.* 325 (4) (86 S. E. 737) ; *Cliett* v. *State,* supra. The coroner's jury verdict was not admissible in the trial of the defendant. It could have no probative value. It could only serve to prejudice the minds of the jury and to subtly influence them. See *Smalls* v. *State,* 101 *Ga.* 570 (28 S. E. 981). In *Styles* v. *State,* 129 *Ga.* 425, 429 (59 S. E. 249, 12 Ann. Cas. 176), it was stated: "Perfect impartiality in the juror is the object of the law. Anything not legitimately arising out of the trial of the case, which tends to destroy the impartiality of the juror, should be discountenanced. . . Verdicts should be the result of calm deliberation, founded upon the law and evidence. The accomplishment of that object can never be assured where irrelevant things which tend to destroy the impartiality of the jurors are allowed to creep into the trial." In *Downer* v. *State,* 10 *Ga. App.* 827 (74 S. E. 301), this court held to the effect that where a juror overhears remarks prejudicial to the accused, the juror is presumed to have been prejudiced and influenced against the accused thereby. When counsel for the defendant here promptly moved for a mistrial, the court overruled same and stated to the jury: "I caution the jury . . to disregard that question as to what the verdict of the coroner's jury was. I caution you not to let that have any lodgement in your minds or memories at all in connection with the case. You are trying this case, not the coroner's jury, and whatever the coroner's jury did is wholly immaterial and wholly beside the point, and I caution you not to consider it whatever." This was the sum total of the court's action on the defendant's motion for a mistrial, promptly made. It has been stated that the misconduct of the solicitor as to improper and prejudicial remarks may be such that the sustaining of objections thereto may not be adequate, and, in addition to sustaining an objection, the judge should reprimand the solicitor, require the improper remarks to be withdrawn, and instruct the jury to disregard them, and also the misconduct of counsel in this regard may be such that its effect cannot be overcome or alleviated sufficiently, and is so prejudicial that the verdict of the jury must have been influenced, and same is not therefore cured by an admonition to the jury or by sustaining the defendant's objection thereto, or by withdrawal by the solicitor, but the court should grant a mis-

trial. See *Fitzgerald* v. *State*, 184 *Ga.* 19, 24 (190 S. E. 602) and cases cited at bottom of page.

Applying the foregoing to the statements and remarks of the solicitor-general here, it is our opinion that the sustaining by the court of the defendant's objection thereto was inadequate to remove the effect thereof from the minds of the jury, and that the court erred in overruling the defendant's motion for a mistrial, promptly made.

It follows that the verdict of guilty not being demanded, the court erred in denying the defendant's motion for a new trial.

*Judgment reversed. Townsend and Carlisle, JJ., concur.*