## 18282. BLAND v. THE STATE.

ARGUED SEPTEMBER 16, 1953—DECIDED OCTOBER 14, 1953.

*Sullivan & Maner,* for plaintiff in error.

*Andrew J. Ryan, Jr., Solicitor-General, Sylvan A. Garfunkel, Jr., Thomas M. Johnson, Jr., Assistant Solicitors-General, Eugene Cook, Attorney-General, Rubye G. Jackson,* contra.

HEAD, Justice. 1. In grounds 1 and 2 of the amended motion for new trial, error is assigned on the court's failure to disqualify two of the jurors comprising the panel drawn to try the defendant. After these jurors had qualified under the general voir dire questions, counsel for the defendant further examined them, as authorized by the act approved February 19, 1951 (Ga. L. 1951, pp. 214-216; Code, Ann. Supp., § 59-705). Error is assigned in each ground because the court failed to disqualify the juror and forced the defendant to exhaust a strike, after such juror had expressed an opinion that was against the defendant.

It is unnecessary to decide whether or not the trial court erred in ruling that these jurors were competent to serve in the trial of the defendant, since the grounds do not show that, by using two of his peremptory challenges in removing these jurors, the defendant exhausted all of his peremptory challenges prior to the selection of a jury. These grounds, therefore, do not show that the defendant was injured, or that there was an advantage to the State, and the ruling, if erroneous, would not require the grant of a new trial. *Ethridge* v. *State,* 163 *Ga.* 186 (1b) (136 S..E. 72); *Faulkner* v. *State,* 166 *Ga.* 645 (6), 646 (144 S. E. 193); *Robinson* v. *Murray,* 198 *Ga.* 690 (32 S. E. 2d 496).

2. In ground 3 it is asserted that the court erred in admitting in evidence certain testimony of the witness Mrs. Frances Hardy, over the objections that the testimony was immaterial and irrelevant, endeavored to show that the defendant was not accustomed to paying his debts, and was derogatory to his character. The testimony objected to was as follows: "He [the

defendant] asked for five bottles of beer and I put them in a bag and he picked them up and started out and told me to put them on a slip, I didn't ask him about paying for them; I just let him go ahead with them; I didn't argue the point at all." This testimony was in reply to the solicitor's question as to whether or not it was all right for her to charge the beer to the defendant.

The fact that the witness was willing to allow the defendant to charge the purchase that he made could not be said to show that he was not accustomed to paying his obligations, nor was it derogatory to his character. Since this evidence was not prejudicial to the defendant, its admission would not require the grant of a new trial.

3. In ground 4 it is asserted that the court improperly admitted in evidence the testimony of the witness Ralph Edward Bland, in which he described how he could identify a Plymouth automobile. This ground is incomplete, in that it does not show that any objection was made to the testimony at the time it was offered.

4. In ground 5 it is contended that the following evidence was illegally admitted by the court: The solicitor asked the witness for the State, Ralph Edward Bland, the following question: "You remember when you came into the office, my office, he was sitting there in a chair; you remember LaDonne and his brother Horace [brothers of the witness], coming in there and threatening you, and I had to get up and walk over to them and tell them to get out of my office?" The witness replied, "Yes, sir." The solicitor then asked: "Is that correct?" The defendant objected to this testimony on the ground that it was not shown in what manner the witness was being threatened.

If the defendant desired to know how the witness was threatened, this was a proper matter to discover on cross-examination, and no error is shown in the admission of this evidence over the objection made.

5. In ground 6 it is stated that the solicitor propounded a question to Captain Leonard Hallman, a witness for the State, as follows: "In your opinion, from the condition of the lighting around there, from the distance of the end of the curbing on the north side of 40th Street to the window where the little boy was sleeping, rather the room where he was sleeping, in your

opinion, based upon all of those facts from what you saw there, could it have been possible for somebody inside that room, looking through one of the venetian blinds, which lift up and down, could they have seen somebody get out of the automobile?" The defendant objected to allowing the witness to reply to this question on the ground that it called for a conclusion on the part of the witness. The objection was overruled, and the witness replied: "After the young lad told me what he had to say about having lifted up the blind, while he was dressing, I walked into the bedroom; the corner of the bedroom window had been lifted up; I don't know which blind because he didn't say; but I lifted up one and could identify seven or eight people who were on the sidewalk and two or three automobiles which were across the street by lifting up one blind only."

"An answer which does not state a conclusion should not be ruled out on the ground that the question, to which such answer was a reply, sought to elicit a mere conclusion." *Robinson* v. *State,* 158 *Ga.* 47 (122 S. E. 886). The officer expressed no opinion as to the ability of the boy, Ralph Edward Bland, to identify a person from the window of the room occupied by him. The question of whether or not the person committing the homicide could be identified by the boy under the conditions which existed at that time, was pertinent to the issue. A state of facts was set forth in the testimony of the officer, and he stated what he saw under the physical circumstances related by him. Whether or not the testimony of the son of the defendant showed that his opportunity to see was equal to that of the officer, was a question for the jury. The officer in his response to the question did not state a conclusion.

6. Ground 7 complains of the admission in evidence of the testimony of the witness Captain Leonard Hallman that he asked the deceased if she knew where she was, and she nodded her head very slightly in the affirmative. The objection to the evidence was that it was a conclusion on the part of the witness. It is not shown that this fragment of evidence was harmful to the defendant, and it was not erroneous to overrule this ground.

In grounds 8 and 10 (there being no ground 9) objection is made to the admission in evidence of alleged dying declarations of the deceased. In ground 8 it is shown that Captain Leonard

Hallman was questioned by the solicitor as follows: "What did you ask her, Captain, and how did you ask her?" The witness replied: "I asked Mrs. Lennon if she knew where she was; she nodded her head in the affirmative; I asked her could she tell me; she shook her head in the negative; I asked her then was it her brother." Counsel for the defendant objected to the testimony on the grounds that, to authorize the admission of a dying declaration, the deceased must make the statement, and that the witness had suggested the name of her brother to the deceased, which was calling for a conclusion from her. This ground does not show what testimony of the witness was allowed after the objection was overruled. In ground 10 it is contended that the following testimony of the witness, B. J. Bennett, was illegally admitted in evidence: "Yes, sir, somebody in the house, I don't know who it was said she [the deceased] had been shot; I asked her who had shot her; she said her brother; I asked her who her brother was and she said Horace Bland." The grounds of objection to the admission of this testimony were that it was an expression of opinion, and that the grounds were not laid to show that the deceased knew she was in the article of death.

Where the victim of a homicide is unable to speak audibly, a dying declaration communicated by signs may be received in evidence. 40 C. J. S. 1257, § 292 (a); 26 Am. Jur. 434, 435, § 399. The alleged dying declarations in the present case were not inadmissible because the answers of the deceased were communicated by nodding her head in the affirmative or in the negative. Nor were they inadmissible because such signs were in reply to questions of the witness. *Benton* v. *State*, 158 *Ga.* 41, 44 (122 S. E. 775); *Davis* v. *State*, 204 *Ga.* 467, 475 (50 S. E. 2d 604).

Counsel for the defendant insist that under the evidence the deceased could not have known of her own personal knowledge the identity of her assailant, and any indication that she made that the defendant committed the homicide was a conclusion. Matters of opinion or belief are not admissible as dying declarations. *McPherson* v. *State*, 22 *Ga.* 478; *Kearney* v. *State*, 101 *Ga.* 803, 804 (29 S. E. 127). Captain Hallman testified that the door through which the deceased was shot had a glass panel with a venetian blind on the inside. He stated: "When I arrived

there the venetian blinds were pulled together, but there is an angle of venetian blinds from which a person on the inside may see outward, but the person on the outside may not see inward; that is the purpose of the interlacing." He stated on cross-examination that he did not ask the deceased whether or not she saw who shot her; and the witness Bennett also stated that he did not ascertain from the deceased whether or not she was able to see her assailant.

In *Strickland* v. *State,* 167 *Ga.* 452, 457 (145 S. E. 879), it was stated: "Where it was manifestly impossible that the deceased could have seen his assailant or known certainly who he was, a mere expression of opinion as to who he was is not admissible as a dying declaration; but where want of knowledge does not appear either from the statement itself or from other evidence in the case, it must be presumed that the declarant stated a fact within his knowledge. In these circumstances it was a question for the jury whether the declaration represented the primary knowledge of the deceased or merely his opinion."

In the present case, the evidence does not show that it was impossible for the deceased to have seen the person who shot her, and it was a question of fact for the jury to determine whether she expressed an opinion based on the fact that the young son of the defendant had told her that his father was coming to the door, or whether she had personal knowledge of his identity.

While there was no evidence that the deceased stated that she knew that she was in a dying condition, there was ample evidence that she had serious wounds from which she died within a few hours from the time that she was shot, and consciousness of her condition could be inferred from the nature of her wounds. *Benton* v. *State,* supra; *Davis* v. *State,* supra.

The trial judge did not err in overruling grounds 8 and 10.

7. Ground 11 has been expressly abandoned. Ground 12 asserts that the trial court erred in failing to grant a mistrial on the motion of counsel for the defendant because of the remarks made by the solicitor in his argument to the jury, as follows: "He says he is still in love with his wife, but in spite of that fact he proceeds to vilify her, explaining why she was trying to get a divorce and going around talking about other women— does that indicate character." The court gave no instruction to

the jury to disregard the remarks, nor did he rebuke counsel.

The defendant had not placed his general character in issue on the trial of the case, and the argument of the solicitor, inferring that the defendant's general character was bad, was improper.

In *Bennett* v. *State*, 86 *Ga.* 401, 403 (12 S. E. 806), it was said: "The State is bound to prove the guilt of a defendant beyond a reasonable doubt, whether his character has been good or bad. It does not follow because an accused person may have a bad character, that he is guilty of the particular offense for which he is being tried."

In *Butler* v. *State*, 142 *Ga.* 286, 288 (82 S. E. 654), it was stated: "A defendant charged with murder has the right to put his character in issue, and when put in issue by him it is to be regarded as a substantive fact. If the defendant does not see proper to avail himself of this privilege which the law affords him, the State can not introduce evidence relating to his general character. It is highly improper for counsel to discuss the general character of the accused when such character has not been put in issue."

In many of the cases which we have reviewed where this court has granted a new trial because of improper argument of the solicitor in regard to the character of the accused, the improper argument injected matters not introduced in evidence, or the solicitor commented on the fact that the accused had not introduced evidence of his good character. For example, see *Washington* v. *State*, 87 *Ga.* 12 (13 S. E. 131); *Ivey* v. *State*, 113 *Ga.* 1062 (39 S. E. 423); *Smoot* v. *State*, 146 *Ga.* 76 (90 S. E. 715); *Harris* v. *State*, 183 *Ga.* 106 (187 S. E. 669); *Fitzgerald* v. *State*, 184 *Ga.* 19 (190 S. E. 602). In the present case, the illustrations which the solicitor used to infer that the defendant's character was bad were drawn from the defendant's own statement. The matters referred to, however, were irrelevant on the issue of whether or not the defendant was guilty of the crime charged, and the solicitor abused his right to draw inferences from the evidence and the defendant's statement when he suggested to the jury that the defendant's general character was bad. By reason of this statement of the solicitor, the jury may have believed that the defendant's general character was a proper issue

in the case, and this misapprehension was not removed from their minds by any reprimand of the solicitor by the trial judge or instruction to the jury on the matter.

In the trial of a criminal case, counsel for the State should refrain from making any argument that might be calculated to unfairly influence the jury in arriving at its verdict. It was error to overrule this ground of the motion for new trial.

8. In ground·13 it is asserted that the court erred in charging the jury as follows: "Gentlemen, the killing of an innocent person while a murderous assault on another may be intended is nevertheless murder; the thing follows the nature of the thing intended to be done, and the guilt or innocence of the slayer depends upon the same considerations which would have governed had he shot at the person against whom it was directed. The general rule is that when one person is assaulted with intent to kill or is killed by mistake or accident, the character of the offense is the same as it would have been if the person assaulted with intent to kill or killed had been the intended victim. The killing of the other is measured by the same standard as though he had killed the one whom he had intended to injure or to kill." It is contended that there was no evidence to support this charge, and that it indicated that the court believed that the defendant shot the deceased while intending to shoot his wife.

"It is . . . the general rule that instructions, even though abstractly correct, should not be given unless authorized by the evidence, or in criminal cases by the evidence or by the statement of the defendant; and when such an unauthorized instruction is given, if it should be confusing .or misleading to the jury, a new trial will be required." *Reeves* v. *State*, 196 *Ga.* 604, 614 (27 S. E. 2d 375). See also *Jackson* v. *State*, 88 *Ga.* 784 (4) (15 S. E. 677); *Humphries* v. *State*, 100 *Ga.* 260, 261 (3) (28 S. E. 25); *Jordan* v. *State*, 117 *Ga.* 405, 406 (3) (43 S. E. 747); *Echols* v. *State*, 119 *Ga.* 307 (46 S. E. 409); *Rooks* v. *State*, 119 *Ga.* 431 (46 S. E. 631); *Wolfe* v. *State*, 121 *Ga.* 587 (49 S. E. 688); *Yopp* v. *State*, 131 *Ga.* 593 (62 S. E. 1036); *Shannon* v. *State*, 147 *Ga.* 172 (93 S. E. 86); *Manuel* v. *State*, 150 *Ga.* 611 (104 S. E. 447); *Betts* v. *State*, 157 *Ga.* 844 (3) (122 S. E. 551); *Goodson* v. *State*, 162 *Ga.* 178, 179 (5a) (132 S. E. 899); *Davis* v. *State*, 190 *Ga.* 100, 101 (4) (8 S. E. 2d 394); *Ross* v. *State*, 194 *Ga.* 514 (22 S. E. 2d 148).

No contention is made that the charge of the court was not abstractly correct, but it is insisted that there was nothing in the evidence or the defendant's statement to authorize such a charge. All of the evidence for the State which connected the defendant with the homicide showed an unprovoked attack on the deceased. While there was evidence that the wife of the defendant had been in the home of the deceased when she first separated from the defendant, she was not staying there at the time of the homicide. There was no evidence that the defendant went to the home of his sister, and shot his sister, thinking that it was his wife, nor was such inference authorized by the defendant's statement. The defendant made a long statement and used much of it in an attempt to discredit his wife, and in the closing sentence stated, "had I made up my mind to murder, I would have murdered Mrs. Bland and not my own blood sister." In his entire statement the defendant contended that he had not committed the homicide, and insisted that it would have been impossible for him to be at the place of the homicide at the time it was committed. His statement did not authorize the court to give the instructions complained of, and the giving of such instructions requires the grant of a new trial.

9. In ground 14 it is contended that it was error to refuse a mistrial because a witness had been allowed to state that she had spent money for the defendant for "bad checks." It is shown in this ground that the trial judge instructed the jury to disregard this testimony. We think this was sufficient to remove any prejudicial effect of the testimony, and the refusal to grant the motion for mistrial was not error.

*Judgment reversed. All the Justices concur, except Duckworth, C. J., and Candler, J., who dissent from the rulings made in divisions 7 and 8, and from the judgment of reversal.*