## 46049. JOHNSON v. THE STATE.

JORDAN, Presiding Judge. The defendant appeals a conviction and sentence for burglary. *Held:*

1. The use of the word "fired" by the prosecutor in his opening statement affords no basis for the grant of a mistrial on the ground that the prosecutor deliberately put the accused's character in evidence. In the colloquial sense as here used it merely discloses that the victim, and not the accused, had terminated the accused's employment a short time before the alleged offense was committed. The mere statement that a person has been fired "is not defamatory as a matter of law. The right to hire implies the right to fire, and therefore a statement that the latter right has been exercised by one's employer does not necessarily have a tendency to injure or discredit the employee who has been discharged." Fairbanks Publishing Company v. Pitka (Alaska) 376 P. 2d 190, 195.

2. The remarks of the prosecutor to which counsel for the defense objected "because there is no scintilla of evidence that this defendant knew where the keys were" are not reported in the transcript. In our opinion the transcript is insufficient in this respect to support the contention. See *Travis v. State,* 122 Ga. App. 800 (178 SE2d 741).

3. The contention that the court erred in failing to instruct the jury to disregard the testimony of Cleveland Hall is without merit. Neither the enumeration nor the brief includes any citations to the transcript to support the statement that this witness "had been impeached by false statements he repeatedly and knowingly made." The testimony of this witness placing the accused at the scene of the alleged crime was in effect admitted by the accused, who stated to the jury that "when he said he seen me, he probably did see me" and then proceeded to explain his presence by stating, "I was passing there through it. But, so far as no stopping or starting, I just kept on passing."

4. The above leaves for consideration the sole issue of whether the evidence supports the conviction. It is uncontradicted that someone burglarized the premises between the time of closing

about 1:15 p.m. and the discovery of the crime about 6 p.m. Cleveland Hall left his work in the vicinity about 5 p.m., and as he was leaving he observed the defendant and an unidentified person in the rear of the premises near a door which, as shown by other testimony, had been unlocked from the inside. These two men were engaged in loading something on a truck. Specifically referring to the accused, Hall testified, "Well, when I saw him he was handing something up on the truck." In our opinion the evidence authorizes the conviction of the accused as a participant in the burglary.

*Judgment affirmed. Bell, C. J., Hall, P. J., Eberhardt, Pannell, Deen and Quillian, JJ., concur. Whitman and Evans, JJ., dissent.*

ARGUED MARCH 3, 1971—DECIDED MAY 5, 1971—
REHEARING DENIED JUNE 4, 1971—CERT. APPLIED FOR.

*Louis H. Mitchell,* for appellant.

*Eugene Hardwick Polleys, Jr., District Attorney,* for appellee.

EVANS, Judge, dissenting. Defendant was charged with burglary. In his opening statement to the jury, the district attorney attacked the defendant's character, by telling the jury that defendant had been "fired" from the place which was burglarized.

Defendant's counsel promptly moved for mistrial, and during the absence of the jury, the trial judge suggested to the district attorney that he use a different word than "fired." The district attorney, during the absence of the jury, stated he would use "termination of employment."

But the trial judge did not at any time thereafter, in the presence of the jury, reprove the district attorney for such statement; nor did he instruct the jury to disregard it; nor did the district attorney ever withdraw the statement, nor did he apologize to the jury for the unauthorized remark.

"To fire" means "to evict forcibly; to discharge from a position; to discharge summarily." It definitely fixes blame or fault upon the person "fired."

Our law has constantly guarded the right of a defendant with respect to not having his character attacked unless he himself first places it in issue. See *Code* §§ 38-201, 38-202. Our courts also

have strongly guarded this right, and time and again our appellate courts have reversed the trial courts for permitting a defendant's character to be placed in issue by the State, even though in many of such cases the remarks were withdrawn and the jury instructed to disregard them. See *Garrett v. State,* 21 Ga. App. 801 (8) (95 SE 301); *Josey v. State,* 89 Ga. App. 215, 218 (79 SE2d 64); *Smoot v. State,* 146 Ga. 76 (1) (90 SE 715); *Bland v. State,* 210 Ga. 100 (7) (78 SE2d 51). A recent case written by Judge Deen, and concurred in by Presiding Judge Jordan and Judge Pannell, and citing the *Bland* case, is that of *Smith v. State,* 118 Ga. App. 464 (1) (164 SE2d 238). On page 465 we find the following language: "'Where counsel in the hearing of the jury make statements of prejudicial matters which are not in evidence, it is the duty of the court to interpose and prevent the same; and, on objection made, he shall also rebuke the counsel, and by all needful and proper instructions to the jury endeavor to remove the improper impression from their minds; or, in his discretion, he may order a mistrial if the plaintiff's attorney is the offender.' *Code* § 81-1009. 'In the trial of a criminal case, counsel for the State should refrain from making any argument that might be calculated to unfairly influence the jury in arriving at its verdict.' *Bland v. State,* 210 Ga. 100, 107 (78 SE2d 51). 'It is error to allow, over objection of the defendant, prejudicial and irrelevant matter to go before the jury in a trial, which tends to place his character and conduct before the jury, where the nature of the case does not involve such character.' *Fitzgerald v. State,* 184 Ga. 19 (190 SE 602) and see *Harris v. State,* 183 Ga. 106 (187 SE 669); *Josey v. State,* 89 Ga. App. 215 (79 SE2d 64). Nor will a mere apology and withdrawal of the remark by counsel, where there is no reprimand by the court, be sufficient to prevent a mistrial if it appears that the remarks were such as to prejudice a fair trial." No apology, withdrawal or reprimand was here made.

In his brief, State's counsel urges that evidence as to the defendant's being "fired" was admissible in order to show motive. He admits that he could find no reported cases supporting this proposition, but he did cite two cases where the crime charged was arson. But, arson is entirely different from burglary. The commission of arson presumes the motive of injuring or damaging

the property, and, inferentially, its owner. The commission of burglary presumes the motive of enrichment of the burglar. But, a complete answer to the district attorney's contention here is that there was no evidence introduced to show defendant had in fact been "fired" and thus a double error was committed. The language used not only attacked defendant's character, but it was without foundation in fact.

The majority opinion cites the case of Fairbanks Publishing Company v. Pitka, 376 P. 2d 190, 195 (Alaska) and quotes therefrom: "The mere statement that a person has been fired 'is not defamatory as a matter of law. . .' " But a careful reading of the opinion shows the court was simply saying that such statement is not "defamatory per se," within the meaning of the libel and slander law. This language on page 195 of the cited case is followed by the following: "There was here at least a *question for the jury* as to whether the publication was in fact understood by those to whom it was addressed in a sense which made it defamatory." (Emphasis supplied.) In the case sub judice, *if the jury could have understood the language "fired" to import fault*, of course this constituted an attack on defendant's character. Further, there is a vast difference between the very narrow confines of the requisites of a suit for slander (or libel) and an attack on character. A person's character may be completely annihilated by his opponent, and yet the injured person may not be able to plead a good cause of action under the law as to slander. To prove libel it must be shown that the words written were both false and *malicious. Code* § 105-701. In the case sub judice, of course the defendant is not required to show the district attorney's words were actuated by *malice.* To prove slander it must be shown the spoken words charge a crime, or a contagious disorder; or an act which would exclude the plaintiff from society, or words that would damage him in his business or profession. *Code* § 105-702. To illustrate, in the case of *Jordan v. Fowler,* 25 Ga. App. 709 (104 SE 511) in a suit for slander, the defendant said of plaintiff: "William Pinkney Jordan is a damn low down yellow son of a bitch . . . a damn low down yellow rotten dog." This was held not to be slanderous. But suppose the district attorney, in his opening statement to the jury, stated that he is going to prove these exact words were true of the

defendant—could any one say defendant's character had not been placed in issue and that a mistrial should not be granted? To the same effect are the holdings in *Morris v. Evans*, 22 Ga. App. 11 (95 SE 385) and *Jones v. Poole*, 62 Ga. App. 309 (8 SE2d 532).

Thus, it is respectfully contended that words which are not per se slanderous may still attack character, and that defendant's character was improperly attacked and placed in issue by the district attorney's opening statement to the jury in this case. I would, therefore, reverse the trial court because of the error set forth in enumeration of error 4.

I am authorized to state that Judge Whitman joins me in this dissent.