## 60431. LOVELAND et al. v. THE STATE.

McMurray, Presiding Judge.

Defendants were convicted of distributing obscene materials in violation of Code Ann. § 26-2101, as amended (Ga. L. 1975, p. 498). Defendant Freeman was sentenced to pay a $1,000 fine and serve a term of 12 months on probation. Defendant Loveland was sentenced to pay a fine of $3,000 and be confined for a term of 12 months and serve 6 weekends in jail, provided, however, that the confinement be probated on the conditions set out in the order of probation. A combined motion for new trial was filed and denied. Defendants appeal, contending the principal instruction to the jury on the element of pandering was erroneous, prejudicial, and violative of defendants' due process rights; the materials are not obscene under constitutional standards; and the statute is unconstitutional on its face in its application to the defendants. *Held:*

1. Defendants' contention that the statute is unconstitutional on its face has been decided adversely to them in *Sewell v. State,* 238 Ga. 495 (233 SE2d 187). Therefore, their contention that the statute is unconstitutional in its application as to them is completely without merit.

2. The police officers observed the loading of boxes in an automobile which they followed to an adult bookstore where the boxes were unloaded into the bookstore. The officers then purchased two separate magazines removed from the boxes believed to have been carried into the bookstore. Our examination of the two magazines discloses that the same are violative of the Code section which defines material to be obscene, that is, depicting or describing, in a patently offensive way, sexual conduct specifically defined

therein, and lacking serious literary, artistic, political, or scientific value and which predominantly appeals to the prurient interest of the average person, applying contemporary community standards, and taken as a whole, the same depicts or creates a shameful or morbid interest in nudity and sex. A warrant was then obtained for the known individual who delivered the boxes to the adult bookstore. The next day the officers returned to the warehouse in order to serve the warrant and in searching for this individual with permission of the person or persons in charge of the warehouse, they observed sexually oriented movies (films) and magazines on the shelves in the main warehouse, including other copies of the same identical magazines purchased at the adult bookstore. Everything in the warehouse pertained to either adult sexually oriented magazines or movies (films), or projectors or repair parts, and tools for same, as well as signs for display for advertisement as to adult bookstores. A search warrant for the warehouse was then obtained and was served the next day. Everything observed the previous day was still in the same location. Various individuals were then arrested, including these two defendants. After a careful review of the trial transcript and record we find, and so hold, that a rational trier of fact (the jury in the case sub judice) could reasonably have found each of the defendants guilty of the offense charged against them. *Driggers v. State,* 244 Ga. 160, 161 (1) (259 SE2d 133); *Moses v. State,* 245 Ga. 180, 181 (1) (263 SE2d 916); *Sanders v. State,* 246 Ga. 42 (1) (268 SE2d 628).

There is no doubt that the magazines come within the Georgia statute as to obscenity under constitutional standards. Further, there is no doubt the entire evidence of all the materials found in the warehouse panders to prurient interest in the creation, promotion or dissemination of materials and the possession of same was with the intent to do so as a commercial exploitation of erotica solely for the sake of their prurient appeal.

3. The remaining enumeration contends the trial court erred in charging on commercial exploitation of erotica as provided in Code Ann § 26-2101 (d), supra. We, therefore, review the evidence more thoroughly in detail below.

An investigator with the State Court of Fulton County Solicitor General's office testified with reference to having the warehouse located in the City of Atlanta at a named address under surveillance. He observed a known individual loading an automobile with boxes. The automobile was followed to an adult bookstore where the boxes were unloaded into the bookstore. The investigator and a detective then entered the adult bookstore and saw what the investigator believed were the same boxes that were carried in and there were magazines inside one of them which was open. One of the boxes

had already been emptied and put into the trash can empty. He asked an individual in the store if he could purchase a magazine out of the box. When he replied that he could, he selected two separate magazines which were pornographic, paying $5 for each. A warrant was then obtained for the known individual who delivered the magazines or the boxes to the store.

The next day the officers returned to the warehouse in order to serve the warrant. The individual for whom the officers had the warrant was not found in the warehouse. A white male (Schergen) asked if he might help them. They identified themselves and stated that they had an arrest warrant. Schergen advised that the individual for whom they had the warrant was not there. He was asked if anybody else was in the warehouse, and he replied in the negative. About this time 2 or 3 people came from the back of the warehouse and the investigator asked Schergen if it would be all right if he searched the warehouse. He said that would be fine.

In walking through the warehouse, after asking if he might search the warehouse for the individual, the investigator observed sexually oriented movies (films) and magazines on the shelves in the main warehouse and copies of the same identical magazines he had purchased at the adult bookstore. Everything that was in the warehouse was either adult sexually oriented magazines or movies or projectors or repair parts and tools for same. There were also signs for adult bookstores in the back rooms. A search warrant for the warehouse was then obtained.

On returning to the warehouse and observing individuals unloading a truck, one of them (Smith) asked if he could help them (the officers). The officers identified themselves and stated that they had a search warrant. At that time Smith and the defendant Freeman and a truck driver were in the back warehouse area. When the officers asked where the people in charge were they were notified to go to the front office. Two individuals (Schergen and the defendant Loveland) were in the office. Defendant Loveland was sitting behind the desk. The investigator identified himself and stated he had a search warrant. Defendant Loveland asked to see it, the search warrant was produced, and he asked to call his attorney. The investigator then returned to the warehouse area, observed a number of copies of the same two magazines he had seen the day before still in the same location, picked up one copy of each, and proceeded back to the main office where he advised Schergen and defendant Loveland that they were under arrest for distributing obscene materials. Two other individuals (Smith and defendant Freeman) were brought to the front from the warehouse area and also arrested. No arrest was made as to a truck driver and two other workmen who had stated that they

were day laborers. Defendant Loveland then secured the building, set the burglar alarm and locked the front door, using the keys, before leaving. Smith contends, however, that he was just driving a rented truck for the others.

During the trial the jury was charged both as to Code Ann. § 26-2101 (b) (Ga. L. 1968, pp. 1249, 1302; 1971, p. 344; 1975, p. 498), which defines material which is obscene and the substance of Code Ann. § 26-2101 (d), supra, that is, that material, not otherwise obscene, may be obscene under this section if the distribution thereof, or the offer to do so, or the possession with the intent to do so, is a commercial exploitation of erotica solely for the sake of their prurient appeal.

Some of the materials observed and seized, while not otherwise obscene, may be obscene under this section if the distribution thereof, or the offer to do so, or the possession with the intent to do so, is a commercial exploitation of erotica solely for the sake of their prurient appeal. Code Ann. § 26-2101 (d), supra. Here, some of the magazines were found to be hard-core pornography. These were purchased in an adult bookstore after being traced from the warehouse, and other copies of the magazines were found in the warehouse. In addition, there were other sexually oriented magazines and movies (films), projectors and parts and signs for adult bookstores, as well as repair equipment for the projectors, all of which established beyond a reasonable doubt that this was a wholesale distribution warehouse for materials of a pornographic nature.

In addition to the above evidence it was established that the corporation which operated the pornographic warehouse was created for the purpose of "pecuniary gain." The corporation paid the defendants' salaries as a part of its payroll. The corporation did $10,000 worth of business shown by its business license for the previous calendar year. Certainly all of the evidence presented in this case authorized the charge on commercial exploitation of erotica solely for the sake of prurient appeal. The materials, if not otherwise obscene, may be obscene "if the distribution thereof, or the offer to do so, or the possession with the intent to do so is a commercial exploitation of erotica solely for the sake of their prurient appeal." Code Ann. § 26-2101 (d), supra. See also *Hays v. State,* 145 Ga. App. 65, 66 (4) (243 SE2d 263). While this was not a retail outlet, the evidence did show a warehousing operation supplying adult bookstores and authorized the charge.

The trial court did not err in charging the jury as to Code Ann. § 26-2101 (d), supra.

*Judgment affirmed. Deen, C. J., Quillian, P. J., Birdsong and Sognier, JJ., concur. Smith, Shulman, Banke and Carley, JJ., dissent.*

750

Argued September 3, 1980 — Decided December 5, 1980 —

*Glenn Zell, Stephen M. Taylor, Robert Eugene Smith,* for appellants.

*Hinson McAuliffe, Solicitor, Leonard W. Rhodes, Assistant Solicitor,* for appellee.

Banke, Judge, dissenting.

Dale Loveland and Robert Freeman were convicted of distributing obscene materials in violation of Code Ann. § 26-2101. The evidence adduced at trial showed that police officers purchased two magazines, entitled "Model's Secrets" and "Oral Exams," from the Cheshire Cat Bookstore, which magazines were shown to have been distributed from a warehouse operated by the appellants. The warehouse was also shown to contain peep-show projectors and booths, which were apparently there for repair.

Appellants enumerate as error the following charge on commercial exploitation of erotica, based on Code § 26-2101 (d): "Material, not otherwise obscene, may be obscene under this section if the distribution thereof, or the offer to do so, or the possession with the intent to do so is a commercial exploitation of erotica solely for the sake of their prurient appeal." The court, having previously defined obscene material in accordance with the statute, charged further that "[i]n order to find the magazines in this particular accusation obscene, you must determine that all of the elements of obscenity . . . that is, the three-pronged test . . . are present and that they co-exist as to that accusation of the three-pronged test or the commercial exploitation. In other words, it's got to be one or the other." Appellants contend that this charge was both confusing and unsupported by evidence. I agree.

The concept of obscenity by commercial exploitation of material not otherwise obscene, i.e., "pandering," apparently had its genesis in Ginzburg v. United States, 383 U. S. 463 (86 SC 942, 16 LE2d 31) (1966). Pandering had earlier been defined by the United States Supreme Court as "the business of purveying textual or graphic matter openly advertised to appeal to the erotic interest of . . . customers." Roth v. United States, 354 U. S. 476, 495-496 (77 SC 1304, 1 LE2d 1498) (1957). The United States Supreme Court in Ginzburg approved a trial court finding that by advertising erotic material on the basis of its sexually provocative aspects, the defendant had "proclaimed its obscenity," despite evidence that the material had some "supposed therapeutic or educational value."

"It is important to stress that this analysis simply elaborates the test by which the obscenity *vel non* of the material must be judged. Where an exploitation of interests in titillation by pornography is shown with respect to material lending itself to such exploitation through pervasive treatment or description of sexual matters, such evidence may support the determination that the material is obscene even though in other contexts the material would escape such condemnation." Ginzburg, supra, at 475-476. "There is no doubt that as a matter of First Amendment obscenity law, evidence of pandering to prurient interests in the creation, promotion, or dissemination of material is relevant in determining whether the material is obscene." Splawn v. California, 431 U. S. 595, 598 (97 SC 1987, 52 LE2d 606) (1977).

In the case before us, the evidence simply shows that the materials were seized at a warehouse and that the warehouse supplied the materials in questions to at least two "adult book stores." This evidence does not show that the magazines, if not otherwise obscene, were obscene by virtue of the appellants' commercial exploitation of them "as erotica solely for the sake of their prurient appeal." The evidence shows only that the material made its way to the bookstores by way of appellants' warehouse before being sold. This is evidence that that the enterprise was a commercial one. It is not, however, in my opinion, evidence of "pandering," which by definition and concept, would allow this court to condemn as obscene, materials not otherwise obscene because of marketing and advertising methods calling attention to obscene characteristics of the material. In this case, the evidence of warehousing and distribution of the magazines called no attention to their obscene features. This evidence was completely neutral regarding the issue of obscenity, and was not "relevant in determining whether the material is obscene." Splawn v. California, supra. Had the magazines in question been *Reader's Digest* and *TV Guide,* the evidence that they were stored in and distributed from the same warehouse in the same manner and later sold in adult bookstores, would not permit their condemnation as obscene under the pandering theory.

Without doubt, the magazines in question, which are before us, are obscene within the meaning of Code Ann. § 26-2101 (b). It is probable, in my view, that the jury would have so found without the inappropriate charge on the pandering theory. Code Ann. § 26-2101 (d). This likelihood does not render the error harmless, however. The jury, based on the court's charge, was required to convict on one of the two alternative theories, only one of which finds support in the evidence. "A charge to the jury which is not authorized by the evidence, and which is calculated to mislead and confuse the jury,

requires a new trial." *Goodson v. State,* 162 Ga. 178, 179 (132 SE 899) (1926); also *Bland v. State,* 210 Ga. 100 (8) (78 SE2d 51) (1953).

For the reasons expressed herein, I respectfully dissent. I would reverse the appellant's conviction and remand the case to the trial court for a new trial.

I am authorized to state that Judge Carley joins in this dissent.